**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ricky Keith MARTIN, Defendant-Appellant.**

No. 75–69.

United States Court of Appeals
Tenth Circuit.

Sept. 29, 1969.

Rehearing Denied Oct. 24, 1969.

Mary Walters, Albuquerque, N. M. (Jamés R. Toulouse, Albuquerque, N. M., was on the brief) for appellant.

Victor R. Ortega, U. S. Atty. (John A. Babington, Asst. U. S. Atty., was with him on the brief) for appellee.

Before PHILLIPS, LEWIS and HICK-EY, Circuit Judges.

LEWIS, Circuit Judge.

The defendant was found guilty by the United States District Court for the District of New Mexico of wilfully refusing to submit to induction into the armed forces, violative of 50 U.S.C. App. § 462. The only defense to the charge which has been made, either in the trial court below or here on appeal, is the alleged invalidity of the Selective Service Local Board's classification of the defendant as I-A-O. It was pursuant to this classification that the induction order, which he disobeyed, was made.[1]

---

1. There is no question that invalid selective service classification may be raised as a defense to prosecution for refusal to submit to induction. In Witmer v. United States, 348 U.S. 375, 377, 75 S.Ct. 392, 394, 99 L.Ed. 428, the Supreme Court stated,

There is no direct judicial review of the actions of the Appeals Boards. Questions concerning the classification

The district court sitting without a jury determined that the appellant's classification as I-A-O was validly made, that the cover sheet of the registrant contained information showing a basis in fact for the classification, and that he was therefore guilty of knowingly refusing to obey a lawful order of induction. The memorandum opinion of the trial court did not specify the information deemed sufficient to support the classification, and our own review of the Selective Service procedures and the trial record leads us to the conclusion that the judgment must be reversed.

Martin initially registered with his local board on August 11, 1966, and requested a conscientious objector's form (SSS form 150). This form is divided into two parts: Part A claims exemption from combatant military service only; Part B claims exemption from military service altogether. On August 24, 1966, Martin signed the statement requesting only noncombatant military status, after first signing, then striking out, Part B. Since Martin was, at this time, still in high school, he was given a student deferment and temporarily classified as I-S(H). On July 27, 1967, he was reclassified as I-A despite the information contained in SSS 150 form wherein he described his and his family's lengthy affiliation with the Radio Church of God and attempted to explain the general beliefs of the Radio Church and his personal allegiance to those particular beliefs of the Church which prevented his participation in military service.[2]

In response to his classification as I-A and in order to clarify his position with respect to noncombatant military service, Martin wrote to the board on August 24, 1967:

> of the registrant may be raised either in a petition for habeas corpus or as a defense to prosecution for failure to submit to induction into the armed forces.
>
> In addition, 50 U.S.C.App. § 460(b) (3) provides that "No judicial review shall be made of the classification * * * of any registrant * * * except as a defense to a criminal prosecution instituted under section 12 of this title, after the registrant has responded either affirmatively or negatively to an order to report for induction * * *."

> My religious convictions will not allow me to participate in war or come under military authority in either a combatant or noncombatant capacity. * * *

In the same letter, he requested an appeal from the I-A classification. The request was, under Selective Service regulations, untimely filed and Martin was advised that he could appeal only with the assistance of a Government Appeals Agent. On September 10, 1967, Martin wrote to the Appeals Agent, stating that he wished to appeal his classification because, "I am by reason of my religious training and belief, opposed to participation in war in any form. * * * " Similarly, before Martin's case was heard by the Appeal Board, the clerk of the Local Board entered the following statements in Martin's file:

> [i]t is not clear whether he claims exemption to both combatant and noncombatant service.

and,

> It is not clear on SSS form 150 if he wishes Class I-A-O or Class I-O.

Although the Local Board recognized that Martin's claims were such as to create doubt as to whether a classification of I-A-O or I-O was sought, no request or suggestion was made by the Board or the Appeals Agent that the nature of Martin's claim be clarified before consideration was given by review at the Appeal Board level. In apparent reliance on Martin's original procedural action in signing Part A of SSS form 150, the Appeals Agent requested a reclassification of Martin from 1-A to I-A-O and on October 27, 1967, the Appeal Board granted such a reclassification.

2. On the form 150, he stated, "I do not believe in any way [sic] of force on any human which may harm them or their body."

On November 9, 1967, Martin wrote to the Local Board:

> I am not satisfied with my new classification I-A-O. I have stated that I will not take part in any form of the armed forces. If my files are carefully read you will see that I will not take part in the service.

The Board responded by allowing Martin to complete a second form 150. The second form was reviewed by the Board on November 28, 1967. In a letter to Martin the Chief Clerk stated that at that meeting the Board

> * * * noted the Appeal Board had classified you in Class I-A-O * * *, which classification this Board considers proper; therefore your classification was not reopened, and you remain in Class I-A-O.

A subsequent personal appearance before the Local Board and review to the Appeal Board did not alter this decision by the Local Board, even though the Deputy State Director did insist that in order to comply with Selective Service Regulations the Local Board must "reopen" the case. In his letter to the Local Board, the Deputy Director stated that "in the event he is not placed in Class I-O, then personal appearance rights accrue." The Local Board granted a personal appearance but left Martin's I-A-O classification unchanged.

The action of the Deputy Director brought into focus the essence of Martin's claim that had become clouded by the routine of procedure: According to Martin's religious beliefs, a I-A-O classification stood in no different light than a I-A classification. Because of Martin's initial mistake in filling out the form 150, he was never granted a full *de novo* hearing with respect to his claim to I-O status. The hearing that was accorded to Martin came only many months after he had, to the best of his ability,[3] manifested the nature of his views. By this time his claim was irrefutably colored by the numerous consultations and the appeal which had preceded its determination. The catalog of facts revealed by the record in this case leads inevitably to the conclusion that this unfortunate chronology was a result not of the unsubstantiality of Martin's religious views regarding military service, but rather a result of Martin's immaturity and inability to intelligently make his views known during the initial registration process and the concomitant failure of the Local Board to clear up the procedural confusion which surrounded the case from its inception.

As the *Witmer* case, *supra,* indicates, there is no direct judicial review of the actions of the Selective Service Boards. Our scope of review is limited to a determination of whether there is any factual basis in the evidence which supports the classification. "The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave to the registrant." (footnote omitted). Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 427, 90 L.Ed. 567. *See also* Carlson v. United States, 10 Cir., 364 F.2d 914; Fleming v. United States, 10 Cir., 344 F.2d 912. Therefore, the issue which must be decided is whether there was a basis in fact for the Local Board's final classification of the registrant as I-A-O, pursuant to which the induction order, which he disobeyed, was issued.

■ With respect to cases involving conscientious objection, the ultimate question which must be determined by the Local Board, and which in turn must be supported by some factual finding, is the sincerity or insincerity of the registrant in his claimed beliefs. Wit-

---

3. At the trial in response to a question as to whether Martin understood, even after explanation, as to what he should do procedurally, the Executive Secretary of the Local Board responded: "No he did not. He didn't appear to understand any of it."

mer v. United States, *supra.* In this case, the appellee asserts that a basis in fact for the board action exists in the form of the "chronology and lateness"[4] with which Martin asserted his claim. The possible inferences arising from the sequence of events leading to a registrant's final classification has, indeed, been repeatedly upheld as a sufficient factual basis for a draft board's decision when the chronology in a particular case raised substantial inferences negativing the sincerity or good faith with which the registrant has pursued his claim for exemption. In *Witmer* the registrant's conviction was sustained on this basis, the Supreme Court stating 348 U.S. at 383, 75 S.Ct. at 396, "It would not be mere suspicion or speculation for the Board to conclude, after denying Witmer's now-abandoned claims [for agricultural and ministerial exemption] that he was insincere in his claim of conscientious objection." In Salamy v. United States, 10 Cir., 379 F.2d 838, this court rejected the registrant's challenge to the validity of his classification on similar grounds: Salamy made no initial claim to conscientious objection; he did so only after he had been found physically acceptable, after his requests for deferment had been denied, and after his induction was imminent.

It is appellee's contention that a similar inference of insincerity and bad faith can be raised by the facts of this case. Yet the sequence of Martin's consultations and appeals to the Selective Service System does not support such a conclusion. The sequence of events in this case resulted primarily from the confusion created by Martin's failure to properly complete the form 150. From the very beginning, Martin's religious statements reflected the necessity in his mind for being classified as I-O. In his first form 150 he stated, in effect, that he did not believe in the use of force in any way (see note 2, *supra*). Three weeks after being classified I-A, he wrote to the draft board that his religious convictions compelled him to decline to serve in either a combatant or noncombatant capacity. One week after being classified I-A-O by the Appeal Board, Martin requested that his classification be reopened and his claim to I-O status be heard. In April of 1968, after the Deputy Director had insisted that the Local Board reopen the classification, Martin wrote to the Board: "I would like to know exactly what evidence would be ample proof. I will supply you with that evidence." In sum, nothing in the chain of events leading to Martin's final classification can reasonably support an inference that he was insincere in his beliefs or that he had pursued his claim for exemption from military service in bad faith. Rather, the reasonable inference to be derived from the sequence of events is that Martin, although naive and perhaps ignorant of Selective Service procedure, adamantly believed that he was entitled to conscientious objector status, and was willing to truculently pursue the rights which he believed to flow from his religious conviction. Martin has consistently indicated a willingness to perform equivalent civilian service in lieu of military service.

4. Appellee's brief states at 9:

The appellant is not correct in saying that the record lacks facts for the board's decision. There was in the record from August 24, 1966, the claim by appellant himself to I-A-O status. It was not until after passing his physical examination September 25, 1967, that he filed, on November 16, 1967, a new Form 150, and not until December 4, 1967, that he claimed the first Form 150 was in error. The local board may properly consider chronology and lateness, Salamy v. United States, *supra*, 379 F.2d at 842. [*infra*]. At his personal appearance, the board could note appellant's demeanor, as well as his words of concern for his personal safety. His asserted privileged position as an ambassador of Christ does not fit the exemption categories, since he was not a minister, nor even yet a baptized member of his chosen religion. The board could take note of the communications from appellant in his file, of his appeals, and of his many discussions with board employees. (See note 5, *infra*).

Alternatively, the appellee contends that Martin's demeanor and words of concern for his personal safety should be held to constitute a basis in fact for the Local Board's rejection of Martin's I-O claim. With respect to the registrant's demeanor, it need only be noted that his draft status remained the same both prior to and after his personal appearance before the Local Board in April. Consequently, it would defy logic to infer from this appearance a basis in fact for the Board's action. When the demeanor of a registrant is shown by the record to have had no effect on the disposition of his case before the Selective Service authorities, it has been held that such evidence cannot constitute an adequate basis in fact for denial of his claim. Parr v. United States, 9 Cir., 272 F.2d 416, 419. Nor does Martin's file state that this was the basis of the Board's action. The registrant's words of personal concern[5] were made at a hearing to revoke his I-A-O classification which, had he been inducted, would have insured his personal safety. With this in mind, insincerity with respect to his religious views cannot reasonably be inferred from these statements. In short, neither the assertions of the appellee nor examination of the record itself reveals any factual basis upon which the action of the Local Board can be grounded.

Although the granting of a I-O status is ultimately a subjective determination of sincerity to be made by the draft board,[6] the claim of conscientious objection cannot be arbitrarily rejected through simple disbelief unsupported by actual permissible inference. The action of the Local Board in the instant case fails to meet this minimal requisite of factual finding. No inferential or overt evidence is found in the record to support the Board action.[7] Where no factual basis exists in the record for denial of a claim to conscientious objector status, the action of a Selective Service Local Board is, to the extent of that denial, beyond its jurisdiction and therefore invalid. A chronology of events caused largely by the failure of Selective Service authorities to aid and assist a registrant in the proper completion of Selective Service forms does not constitute a factual basis from which to infer insincerity or bad faith on the part of that registrant with respect to his religious views regarding conscientious objection. To hold otherwise would elevate the import of the initial accurate completion of those forms far above what is necessary to insure orderly procedure in the Selective Service System.

The judgment is reversed.

5. During the registrant's personal appearance he stated:
A. I am an Ambassador of Christ. If I was to come to the United States from Russia I would not be obligated to serve under our society. Thus, just as I am an Ambassador of Christ, I am not required to serve; any required service of any sort, irrespective of whether it is connected with military or not. Any form of military service.
Mr. Botts: Perhaps I misunderstood statement: I got the impression that you were comparing your situation to an Ambassador from Russia, who would not be required to perform any obligation.

A. No, Sir, I do love this land and I do abide by man's laws but just as I stated, any law that conflicts with God's Laws, such as killing, I would stop and not get myself injured or killed. This directly conflicts with God's Laws.

6. Cf. Clark v. Gabriel, 393 U.S. 256, 258, 89 S.Ct. 424, 21 L.Ed.2d 418.

7. In its "Summary of Facts" the Local Board stated only that "The Board does not feel [Martin] is eligible for Class I-A-O * * * [o]r for Class I-O" [under the applicable Selective Service Regulations].