**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Philip Archie LEMMENS, Defendant-
Appellant.**

**No. 18061.**

United States Court of Appeals,
Seventh Circuit.

Aug. 4, 1970.

Jack N. Eisendrath, Milwaukee, Wis., for defendant-appellant.

David J. Cannon, U. S. Atty., Richard E. Reilly, Terry E. Mitchell, Asst. U. S. Attys., Milwaukee, Wis., for plaintiff-appellee.

Before CLARK, Associate Justice, Retired,[1] SWYGERT, Chief Judge, and FAIRCHILD, Circuit Judge.

FAIRCHILD, Circuit Judge.

Philip Lemmens appeals from a conviction of failure to report for induction. He challenges the validity of the board's order on several procedural grounds, and on the ground that the board was unlawfully constituted. He also asserts that there was no basis in fact for 1-A classification and rejection of his claim as conscientious objector. We conclude that the latter challenge has merit, and do not decide the others.

Lemmens registered with his local board in January, 1965 at age 18. He did not then claim to be a conscientious objector. He was first classified and deferred as a high school student, and then twice as a college student, effective until October, 1967. On September 11, 1967, while still age 20, he filed the conscientious objector Form 150. The local board and, on appeal, the appeal board classified him 1-A. Neither board indicated its reason for rejecting his claim as conscientious objector.

Lemmens was physically examined and found acceptable. The local board ordered him to report for induction April 18, 1968. He notified the board that he would not report, and did not.

At trial, the district court concluded, "But the fact that he made his claim belatedly and the fact that he hasn't supported it with any material of substance all demonstrate that the board had a basis in fact for its conclusion."

(1) *Right to review.*

Lemmens did not report for induction. The government argues that because he did not first report and then refuse to submit, he failed to exhaust administrative remedies and is not entitled to judicial review.

Congress has provided that there shall be no judicial review of a classification except as a defense to a criminal prosecution "after the registrant has responded either affirmatively or negatively to an order to report for induction * * *."[2] That language does not deny review to a defendant who has wholly failed to report.

In McKart v. United States[3] the Supreme Court held judicial review appropriate in a criminal prosecution where a defendant wholly failed to report. The Court disposed of other challenges to the right of review, but there appears to have been no challenge based on the fact that he did not first report and then refuse to submit.

The government relies on United States v. Smogor[4] decided by this court a few days before *McKart.* Smogor's physical examination was no longer valid on the induction date. If he had reported, he would have been re-examined, and there was a theoretical possibility he might have been rejected as a result. We said Smogor, by not reporting, had failed to exhaust administrative remedies and had lost his right of review. One of the holdings in *McKart* was that even though McKart had failed to report for a pre-induction physical, with the same possibility of rejection, he was not barred from review of his classification.

---

1. The Honorable Tom C. Clark, Associate Justice, United States Supreme Court, Retired, is sitting by special designation.

2. 50 U.S.C. App. § 460(b) (3).

3. (1969), 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194.

4. (7th Cir., 1969), 411 F.2d 501.

If the holding in *Smogor*, above referred to, retains any validity after *McKart*, Smogor's facts differ from those now before us, in that Lemmens had been found acceptable upon a physical examination, and the results were still valid.

■ We think that *McKart* necessarily implies that Lemmens' failure to report does not bar review.[5]

### (2) *Lemmens' claim as conscientious objector.*

The local board reclassified Lemmens 1-A on October 12, 1967, rejecting his claim as conscientious objector. Presumably because of a letter he presented after receiving notice, the board again classified him 1-A October 26. Lemmens did not appear personally before the board. There was testimony at trial suggesting that he requested a personal appearance, but the district court found he did not.

When the board acted October 12, it had before it Lemmens' Form 150 with his description of his belief on a supplemental page.

Lemmens signed statement B on the form claiming conscientious opposition, by reason of religious training and belief, to participation in war in any form and to participation in noncombatant training and service in the armed forces. In answers to questions he asserted that he believes in a Supreme Being; that the belief which is the basis of his claim "comes from within me and has been fortified by reading what the great prophets of love, Jesus, Buddha, Gandhi, etc. have told us and by seeing every day the actual power which love has over violence and the terrible things hate and war bring a man to"; that he does not believe in military force of any kind, but does believe in "non-violent, passive force" and the use of the force of love; that his father is a Catholic and his mother a Baptist, but that he himself is not a member of a religious sect or organization. He indicated that he had expressed his beliefs only in informal discussions in small groups and in papers written for school; that he does not rely on one individual or group for religious guidance, but that "God (Love) guides me". He gave the names and addresses of three persons who could supply information as to the sincerity of his convictions, describing one as his professor and two as student friends.

Lemmens described his belief as follows:

"I believe that as an objector to war I am simply following the example of Christ and having faith in him that by doing so I will have everlasting life in paradise. Christ not only told us to turn the other cheek, to love thy neighbor, and to love God who is love but he also provided the supreme example when he, who it is said was God's son and had supernatural powers of any sort simply by saying so, suffered a most agonizing death as a human being simply to show us that it is possible for us to do the same. He asked for God to forgive those who did it to him because they knew not them what they were doing. We know and yet we do not show that we have faith in him that complete and all forgiving love is the answer.

"Instead we fight stupid, needless wars, and build up hate in the search for power, fame, honor, and wealth here on earth trying to say that it is for God and love when it is just the opposite to what He wants. There have been many prophets who have come and gone who carried this message such as Gandhi, Buddha, Martain Luther King and have proven that it works but we are of little faith and do not believe that God will provide for us our physical needs here on earth if

---

5. See United States v. Powers (1st Cir., 1969), 413 F.2d 834, 836, footnote 1; and United States v. Prescott (D.N.H., 1969), 301 F.Supp. 1116. See also Layton and Fine, The Draft and Exhaustion of Administrative Remedies, 56 Geo.L.J. 315, 322–31 (1967); Notes, 1969 Wis.L.Rev. 630, 635; 81 Harv.L.Rev. 685, 688 (1968); and 56 Cal.L.Rev. 448, 453 (1968).

we but live for the spiritual necessities. I do have faith in God and while I am a pacifist I am not one of the type who wishes to sit back and do nothing. I want to help mankind, to spread love but I know that military force does no such thing but acts in the opposite direction. I welcome any tests of my sincerity in this belief and will serve mankind in any capacity that I feel and that God tells me will really serve them. If I had time I could write a book on this subject and if you want more of why I believe this way let me know. These are just a few of the main reasons."

The letter received from Lemmens before board action on October 26 reads as follows:

"Recently I received notice that I am now classified as 1-A. There was no comment or information as to my appeal as a conscientious objector. Because it is against my conscience and belief I cannot and will not accept the 1-A classification. If further action is necessary to convince you that I am sincere and not just a draft dodger or young rebel please let me know what it is. As I stated in my questioneer I am not against serving mankind and my country. I will give my life for my country but I will not take a life or help support someone else to take a life. If there is no other way then you will have to send me to prison before I will support the military. I am ready to serve my time either way if neccessary. Please let me know the way things stand as of right now."

This case falls in a difficult area. "Few would quarrel, we think, with the proposition that in no field of human endeavor has the tool of language proved so inadequate in the communication of ideas as it has in dealing with the fundamental questions of man's predicament in life, in death or in final judgment and retribution." [6]

The person entitled to the statutory exemption is one "who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term 'religious training and belief' does not include essentially political, sociological, or philosophical views, or a merely personal moral code". [7]

Even when the statute included "an individual's belief in a relation to a Supreme Being * * *." in the definition of "religious training and belief", belief in a "traditional God" was not required, and the test was "does the claimed belief occupy the same place in the life of the objector as an orthodox belief in God holds in the life of one clearly qualified for exemption" [8]

Recently, and under the statute in its present form, applicable at the time of Lemmens' claim, the Supreme Court has held: "That section exempts from military service all those whose consciences, spurred by deeply held moral, ethical, or religious beliefs, would give them no rest or peace if they allowed themselves to become part of an instrument of war ". [9]

■ We find it clear that the belief described by Lemmens is the type of belief which qualifies for the exemption, and that the board could not lawfully deny the exemption unless it decided, with some basis in fact, that Lemmens does not deeply and sincerely hold the belief he represents he has. [10]

### (3) Did the board find insincerity?

Neither the local board nor the appeal board indicated the reason for which it rejected Lemmens' claim as conscientious objector. The district court dis-

6. United States v. Seeger (1965), 380 U.S. 163, 174, 85 S.Ct. 850, 858, 13 L.Ed.2d 733.

7. 50 U.S.C. App. § 456(j).

8. *Seeger*, pp. 178, 184, 85 S.Ct. p. 863.

9. Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970).

10. Witmer v. United States (1955), 348 U.S. 375, 382, 75 S.Ct. 392, 99 L.Ed. 428.

cerned a basis in fact for a finding that Lemmens was insincere or that his belief was not deeply held. The court felt the lateness of the claim and lack of documentation formed such basis. As will be later developed, we would have difficulty agreeing that those circumstances constitute a basis in fact for a finding of insincerity if the board had so found, but our problem is compounded by the absence of any indication that it so found.

If the classification of 1-A represents a decision by the board that the belief described by Lemmens is not the type of belief which calls for exemption, the decision is wrong as a matter of law and there is no basis in fact for it. If, on the other hand, the classification represents a decision that Lemmens does not sincerely and deeply hold the belief he claims, then the question becomes whether there is a basis in fact for such decision.

There is no general requirement, either by statute or regulation, that a board make findings or state reasons for rejecting a claim of deferment or exemption. Probably there are many cases, perhaps even some where a claim as conscientious objector is made, where even in the absence of an express finding, the issue really decided by the board is readily apparent from the file, and a court can say with some assurance that the board made a decision which properly supports the classification.

But particularly in this difficult area of claims as conscientious objector there are factors which militate against a presumption that the board applied correct legal principles and reached its classification by a decision of an issue legitimately presented for it to decide. The difficulty widely experienced in interpreting the law is well known. The process of deciding such an issue as sincerity of belief is delicate, as is often the case with issues as to intent. Conscientious opposition to war has traditionally been a minority point of view and the danger that prejudice may affect the decision is real.

The second circuit, in one of the decisions affirmed in *Seeger*, reversed a conviction because the court was unable to determine whether the board determined the classification upon a legal or an illegal ground.[11]

The ninth circuit reversed in a similar situation, stating:

"The local board may have concluded that Haughton was insincere in his claim, or that Haughton's religious training and beliefs did not, by themselves, lead him to his opposition to war. The board may have relied on information not in the record, contradicting the allegations in Haughton's form 150. Or the board may have erroneously concluded that Haughton's allegations, even if true, did not entitle him to his requested classification. Since the board has not stated the basis for its decision, we cannot determine whether Haughton was properly denied conscientious objector status."[12]

The fourth circuit reversed a conviction and stated a rule: "Where it is clear that a *prima facie* case was established, we conclude that in conscientious objector cases, it is essential to the validity of an order to report that the board state its basis of decision and the reasons therefor, i. e., whether it has found the registrant incredible, or insincere, or of bad faith, and why".[13]

The sixth circuit, although holding that where "the veracity of the registrant is the principal issue, disbelief will

11. United States v. Jakobson (2d Cir., 1963), 325 F.2d 409, 417. See Paszel v. Laird (2d Cir., 1970), 426 F.2d 1169; United States v. St. Clair (E.D.N.Y., 1968), 293 F.Supp. 337, 344.

12. United States v. Haughton (9th Cir., 1969), 413 F.2d 736, 742.

13. United States v. Broyles (4th Cir., 1970), 423 F.2d 1299, 1304; see also United States v. James (4th Cir., 1969), 417 F.2d 826, 832; O'Brien v. Resor (4th Cir., 1970), 423 F.2d 594, 597.

suffice", went on to say: "But even in the latter situation, the record must contain some statement of this disbelief if the classification is to be upheld upon judicial review". The conviction was reversed.[14]

■ We are persuaded that where the validity of a classification rejecting a claim as conscientious objector is in issue, and where the registrant described a belief which on its face fulfilled the legal requirements, the board did not state its reason for rejection, and the court can not otherwise determine with any degree of assurance that the decision really made by the board properly supported the rejection and had a basis in fact, the court should hold the classification invalid.[15]

(4) *Delay and brevity as basis in fact.*

We find no information in Lemmens' file concerning activity or expression by him which would be inconsistent with the belief he professes.

The district court concluded that the lateness of Lemmens' claim and the absence of additional supporting material supplied a basis in fact for the board's decision.

Lateness in Lemmens' case consisted only of the fact that he did not claim as a conscientious objector at age 18, but so claimed shortly before reaching 21. In the intervening two and one half years he had been deferred as a student. He was still deferred at the time he made his claim.

The belief he claimed was purely an individual one, unrelated to any organization of believers or widely recognized doctrine. Such a belief may well not have matured or crystallized by age 18.

It is true that Lemmens' claim was not documented beyond his answers to Form 150, including the supplementary statement and letter already quoted. It is much less sophisticated than the material described in many of the decided cases. In both the statement and letter, however, Lemmens asked the board to let him know if more was required, and the board made no request.

The file shows that Lemmens sought and received an appointment with an appeal agent. At trial there was testimony by the appeal agent that Lemmens had conferred with him. The appeal agent testified that he had few contacts with conscientious objectors, that he inquired about Lemmens' church connections, that he was unfamiliar with *Seeger* and had no occasion to use it in counselling conscientious objectors, and did not personally examine Lemmens' file.

If the board had made a finding that Lemmens does not sincerely and deeply hold the belief described, it is at least doubtful that the timing combined with the brevity of his claim would suffice as a basis in fact.[16] We rest our decision, however, on the absence of any finding.

The judgment is reversed and the cause is remanded with directions to dismiss the indictment.

This court is grateful to Mr. Jack Eisendrath of Milwaukee for his resourceful and diligent representation of Lemmens as appointed counsel.

---

14. United States v. Washington (6th Cir., 1968), 392 F.2d 37, 39.

15. See United States v. Prince (D.Me., 1970), 310 F.Supp. 1161, 1166; United States ex rel. Morton v. McBee (N.D.Ill., 1970), 310 F.Supp. 328, 331.

16. See Batterton v. United States (8th Cir., 1958), 260 F.2d 233; Kessler v. United States (5th Cir., 1969), 406 F.2d 151, 156; United States v. Martin (10th Cir., 1969), 416 F.2d 44, 48.