**UNITED STATES of America**

v.

**Loring Bernard MOORE.**

**No. 72 CR 120.**

United States District Court,
N. D. Illinois, E. D.

June 21, 1972.

Sidney Ezra, Chicago, Ill., for plaintiff.

Asst. U. S. Atty. Ted Scudder, Chicago, Ill., for defendant.

## DECISION

McMILLEN, District Judge.

Defendant stood trial for failure to report for induction on May 26, 1970, and for refusal to submit to induction on May 27, 1970. Although the defendant seems to have intentionally avoided induction by several evasive actions, he is the beneficiary of improper processing of his conscientious objector applications and must therefore be found not guilty of both charges.

■ Defendant was initially classified 1–A on November 20, 1967. On or about January 28, 1968 he filed SSS Form 150 to claim reclassification as a conscientious objector. On February 13, 1968 his Local Board rejected this claim without stating any reasons. Defendant appealed, and the Appeal Board also rejected this claim without stating any reasons. This was erroneous if the defendant made out a *prima facie* case for a conscientious objector classification: unless the basis for the Board's decision is self-evident, defendant should have been advised of the specific grounds for rejecting his claim. United States v. Lemmens, 430 F.2d 619 (7th Cir. 1970); see also United States v. Stribling, 437 F.2d 765 (6th Cir. 1971) and cases cited in Fein v. Selective Service System, etc., 405 U.S. 365, 92 S.Ct. 1062, 31 L.Ed.2d 298 (March 21, 1972), fn. 7.

■ In his Form 150, defendant wrote out the following statements by which he adequately anticipated the test of a conscientious objector later to be approved by the United States Supreme Court in Welsh v. United States, 398 U. S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970):

2. I feel morally opposed to killing or being trained to kill another human being. I believe that moral values are deeply established in a persons character should not be violated. In fact the Moral values which I am aware of are the very guidelines by which I live. These values require strengthning and reinforcement if peace is to be present in my life. Being forced by the army to renounce an important and basic value in my life, that of being involved directly or indirectly with killing another human being, causes a tyrany a deterioration and decay of the essence of my life, my values. My Moral opposition to killing must naturally conflict with war, the Army and the maintainence of the instruments of war.

What peace and pleasure can I find in life if I cannot live according to what I feel is important to me? Life is important to me, almost sacred. I feel that the lives of others are just as important.

I must not and cannot betray my deepest obligation. That of living a life free from inner conflicts which result from a decay of deep and important moral (life) values.

I feel that everyone should be free to think and develop in his own way, and come to his own peace.

5. I am very much against the use of violent force. I do not live a life in which I would use or approve of the use of violence. This is due to my way of looking at violence. I feel that Man is a rational animal and Mans use of violence puts man on a level with lower forms of animals. I believe man can overcome this irrational tendency toward violence, But only as Man learns more about himself his life and his motives.

Most men are incapable of developing their human qualities. Surely man should want to strive to be above the lower animals. Being a rational and human animal is mans only salvation from the evil forces, such as the

social, political and economic system of the United States, which form mens thoughts and force men to become an irrational non-human, selfish and violent animal.

A comparison of the foregoing language with that in Welsh v. United States (supra) illustrates why the Local Board should have exercised its obligation to specify the basis on which it rejected defendant's claim, either for insincerity or as purely political or perhaps for some other reason. Cf. United States v. Clay, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971). In *Welsh*, the court said at 398 U.S. at pp. 343–344, 90 S.Ct. at p. 1798:

Welsh stated that he "believe[d] the taking of life—anyone's life—to be morally wrong." App. 44. In his original conscientious objector application he wrote the following:

"I believe that human life is valuable in and of itself; in its living; therefore I will not injure or kill another human being. This belief (and the corresponding 'duty' to abstain from violence toward another person) is not 'superior to those arising from any human relation.' On the contrary: *it is essential to every human relation.* I cannot, therefore, conscientiously comply with the Government's insistence that I assume duties which I feel are immoral and totally repugnant." App. 10.

Welsh elaborated his beliefs in later communications with Selective Service officials. On the basis of these beliefs and the conclusion of the Court of Appeals that he held them "with the strength of more traditional religious convictions," 404 F.2d [1078], at 1081, we think Welsh was clearly entitled to a conscientious objector exemption. Section 6(j) requires no more. That section exempts from military service all those whose consciences, spurred by deeply held moral,

ethical, or religious beliefs, would give them no rest or peace if they allowed themselves to become a part of an instrument of war.

Defendant failed to report for induction as ordered on July 23, 1968. His case was therefore referred to the United States Attorney, and defendant was contacted by the F.B.I. He then wrote the following letter to his Local Board which the prosecution asserts to be a waiver of his conscientious objector claim:

By this letter I am requesting that my induction order of July 23, 1968 be cancelled. I have reconsidered my position concerning my relationship with Local Board No. 89. After conversations with friends and relatives I have decided that my actions, following the above order to report for induction, were not in the best interests of myself or my family. I am now willing to accept any further induction order, and my response will be positive. I hope that by acting positively to a new induction order I may avert any pending penalty or prosecution.

My relationship with the Selective Service System has been, I feel, a fairly good one. I do think, however, that I have one valid grievance which I am sure you will gladly clarify for me. I requested a form #150 for conscientious objectors, which I completed and returned to you. I never received any response or explanation from you.

In closing I wish to emphasize my desire to take positive and necessary action upon receipt of any directives or orders. Your immediate reply in these matters is anticipated.

When this letter was written, Local Board Memorandum 41 was in effect. Paragraph 4 thereof provided as follows:

Withdrawal of a Claim Must be in Writing. Whenever a registrant has claimed conscientious objection to war the claim shall not be considered to

have been withdrawn until the registrant voluntarily submits, and there is filed in his Cover Sheet (SSS Form 101) a written statement signed by him *specifically withdrawing* the claim. . . . After such written withdrawal has been filed, the previous claim of conscientious objection shall be disregarded when considering the classification of the registrant. [Emphasis added.]

At his trial, defendant attempted to explain the "positive action" language in his letter to mean that he wanted to exercise his rights by refusing to be inducted. The letter does not seem to be reasonably subject to this interpretation. On the other hand, it is not a specific withdrawal of a conscientious objector claim, as required by Local Board Memorandum 41. In the second paragraph of his letter defendant specifically indicated that he still considered his conscientious objector application to be alive, and he even complained about the Board's failure to give him any reason for its rejection.

The regulation amounts to a penal provision and the defendant is therefore entitled to a strict and literal construction. His letter cannot even be considered as a waiver of an objection to the legal sufficiency of his 1–A classification, since there is no reason to believe defendant knew of any defect in it. In the court's opinion, the defendant was stating that he had changed his mind about resisting induction, after talking to the F.B.I., but this does not foreclose him from changing his mind again. It would be reading too much into the letter to give it the specific and irrevocable effect desired by the prosecution.

Defendant was ordered a second time to report for induction on May 29, 1969. Shortly before that date he requested and obtained another SSS Form 150. His induction was therefore postponed and he filed this form and a dependency form (SSS 118) on June 11, 1969. His second Form 150 improved his claim because he signed the form statement of conscientious objection (par. I–B). Merely by signing this statement, which is in the words provided by the Selective Service System itself, a registrant presents a *prima facie* case for exemption. Defendant thereby also withdrew any waiver contained in his letter.

Defendant elaborated on his claim by the following answers written on his Form 150:

1. My claim is based not on belief or opinion, nor are my ideas formed by any training in a strictly religious sense. I know wars and their consequences are bad. Some day in some distant age the time of our existence on this planet will be looked upon as being a rather dark stage of our development into rational truly human beings.

People don't have to be the way they are necessarily. People can change, grow develop and learn. Wars don't have to be fought unless we resign ourselves to fight them. If we make provisions for peace there will be peace. If we seek truth there will be the seeking of truth. If we seek to destroy there will be destruction. If our Country sees fit to pour billions of dollars into war systems, wars become necessary.

. . . I object to wars simply because humanity hangs in balance. Life is good, I feel, and I just can't be a part to the destruction of the Most wonderful thing I know—Life.

\* \* \* \* \* \*

Knowledge and truth, when sought, can be obtained with or without special training, and once sought naturally preclude the need for blind obedience.

3. Let those who believe it is important to Minister to the sick and injured do so. For me it is more important to deny the Military and to admit wars and the United States Military System to be very destructive forces. By serving the U.S. Military System in any capacity, I would be in fact condoning and worst of all serving a destructive force. I see caring for people in hospitals as a compromise. I would be by my actions saying; I really can't do any of your murdering but if you want me to aid those who do the really dirty work I will and by so doing condone the United States Military System.

We should never think that weapons made of Iron and Steel are infalliable. The written and spoken word in the form of Ideas can be much more powerful and permanent.

Defendant was thereafter given a courtesy interview, and the Local Board advised him on February 3, 1970 that there was no change in his status resulting from circumstances over which he had no control. This is not a basis for rejecting a conscientious objector claim, and the Board's reasons for disallowing defendant's *prima facie* case were not self-evident. His 1–A status was therefore erroneously continued.

Defendant was ordered to report for induction on May 27, 1970. He passed the physical exam but refused to submit for induction. By reporting for induction, defendant protected himself from the charge of failing to report and for that reason is not guilty of Count I of the indictment. But since his conscientious objector claim should not have been rejected without stating the reasons, he was invalidly classified 1–A and was not properly subjected to induction. Therefore he is not guilty of Count II.

Since the defendant has not been proved guilty of either Count beyond a reasonable doubt, he is hereby discharged.