**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Thomas Michael RIELY, Defendant-**
**Appellant.**

**No. 72-1709.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 21, 1973.

Decided Aug. 9, 1973.

Rehearing Denied Oct. 9, 1973.

George C. Pontikes, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., William T. Huyck and Theodore T. Scudder, Asst. U. S. Attys., Chicago, Ill., for appellee.

Before STEVENS, Circuit Judge, GRANT,* Senior District Judge, and GORDON **, District Judge.

STEVENS, Circuit Judge.

Appellant's failure to report for induction on October 28, 1969, was followed by criminal prosecution, conviction, and this appeal. He contends that his induction order was defective because his local board failed to state reasons for denying him exemption as a conscientious objector on August 19, 1967.

Under the reasoning of our decision in United States v. Lemmens, 430 F.2d 619 (7th Cir. 1970), his contention would fail because his SSS-Form 150 did not describe a belief which on its face fulfilled the legal requirements. He argues, however, that the confession of error by the Solicitor General in Joseph v. United States, 405 U.S. 1006, 92 S.Ct. 1274, 31 L.Ed.2d 473, as interpreted in United States v. Weaver, 474 F.2d 936 (7th Cir. 1973), has extended the Lemmens rule to cover all unexplained denials of exemption after a reopening that

would have been improper unless the registrant stated a *prima facie* claim. As we read the Solicitor General's Memorandum in *Joseph*, it does not go quite that far; moreover, the legal significance of that document is somewhat obscure since the government has not confessed error in this case.

We first consider the case without regard for the *Joseph* Memorandum and then turn to its significance.

I.

Appellant registered in 1964, received a student deferment in 1965, and, in 1966, was classified I-A. On May 19, 1967, he submitted his Form 150 requesting a I-O classification. The form was not supported by any letters or documents, stated that appellant had not given public expression to his views, that there was no individual upon whom he relied for religious guidance, and that he was not a member of any religious sect or organization. The source of his beliefs was described as "deep thinking of the subject matter under the influence of mind expanding drugs." The basis of the claim was stated as a belief "that man, as part of the Universe, was created to live together and make achievements which will better the entire human race, and under no circumstances become involved in organized war."[1]

Appellant's Form 150 was plainly insufficient on its face. Making the dubious assumption that the unsupported, vague assertion in the form may be interpreted as an expression of opposi-

* Senior District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation.

** District Judge Myron L. Gordon of the Eastern District of Wisconsin is sitting by designation.

1. The only other relevant statements in the form were appellant's answers to questions 5 and 6:
   "5. Under what circumstances, if any, do you believe in the use of force?

   A. I believe in the use of non-violent force, when the results are beneficial to mankind.
   I do not believe in organized-violent-force, such as that used by army's [sic] in wars.
   6. Describe the actions and behavior in your life which in your opinion most conspicuously demonstrate the consistency and depth of your religious convictions.
   A. A non-violent way of life. A rejection of violence out of love."

tion to "war in any form," see Gillette v. United States, 401 U.S. 437, 444–446, 91 S.Ct. 828, 28 L.Ed.2d 168, appellant's statement wholly failed to satisfy the statutory requirement that his claim be rooted in "religious training and belief," even as that phrase has been construed in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733, and Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308.[2] In our opinion, appellant's assertions were not the kind of "non-frivolous allegations of facts" that would have required the board to reopen his classification under the test stated by the Supreme Court in Mulloy v. United States, 398 U.S. 410, 416, 90 S.Ct. 1766, 26 L.Ed.2d 362.

But since the board did reopen his classification, appellant argues that it could not legitimately deny him an exemption without furnishing a statement of reasons. This argument is not supported by the *Lemmens* analysis.

We first note that the board action under review took place over two years before the statute was amended to require that registrants be furnished a brief written statement of the reasons for adverse Board decisions. See Fein v. Selective Service System, 405 U.S. 365, 377–378, 92 S.Ct. 1062, 31 L.Ed.2d 298. Although there was no statute or regulation in 1967 requiring that such a statement be furnished; we have nevertheless held, consistently with other circuits,[3] that a statement of reasons is

---

2. *Seeger* and *Welsh* construed § 6(j) of the Universal Training and Service Act, codified at 50 U.S.C. App. § 456(j). At the time of *Seeger*, that section provided in part:

> "Nothing contained in this title shall be construed to require any person to be subject to combatant training and service in the armed services of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. Religious training and belief in this connection means an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code." 62 Stat. 612.

*Seeger* and *Welsh* disposed of the view that "religious training and belief" required belief in a Supreme Being:

> "We have concluded that Congress, in using the expression 'Supreme Being' rather than the designation 'God,' was merely clarifying the meaning of religious training and belief so as to embrace all religions and to exclude essentially political, sociological, or philosophical views. We believe that under this construction, the test of belief 'in a relation to a Supreme Being' is whether a given belief that is sincere and meaningful occupies a place in the life of its possessor parallel to that filled by the orthodox belief in God of one who clearly qualifies for the exemption." 380 U.S. at 165–166, 85 S.Ct. at 854.

The specific exclusion of a merely personal moral code was preserved: "The use by Congress of the words 'merely personal' seems to us to restrict the exception to a moral code which is not only personal but which is the sole basis for the registrant's belief and is in no way related to a Supreme Being." 380 U.S. at 186, 85 S.Ct. at 864. Although Riely signed the printed "Claim for Exemption" on the Form 150, his handwritten descriptions of his beliefs elsewhere in the Form 150 make it clear that his views amounted at best to a "merely personal moral code."

3. The Solicitor General cites some of the leading cases at pages 12–14 of his memorandum in *Joseph:*

> "In recent years, however, as petitioner points out (Pet.Br. 26–28), there has emerged in the courts of appeals a substantial line of authority—beginning essentially with United States v. Haughton, 413 F.2d 736 (C.A. 9)—holding that the failure of local boards to articulate in writing the bases for their denials of conscientious objector claims is fatal where the information in the Selective Service file shows that the registrant made out a *prima facie* case for exemption. See, e. g., Scott v. Commanding Officer, 431 F.2d 1132 (C.A. 3); United States v. Stetter, 445 F.2d 472 (C.A. 5), and the cases collected therein at 482–483 nn. 5–12." Memorandum for the United States on the Merits: Joseph v. United States, No. 70–251, O.T. 1971, pages 12–14.

essential if "meaningful" review would otherwise be impossible, United States v. Lemmens, 430 F.2d 619 (7th Cir. 1970). In that case, after carefully establishing the proposition that the registrant had described the type of belief which qualifies for the exemption, see 430 F.2d at 621–622, Judge Fairchild explained the reason for the rule— ". . . the court cannot otherwise determine with any degree of assurance that the decision really made by the Board properly supported the rejection and had a basis in fact." Id. at 624.

■ That reason is inapplicable if the registrant's claim is plainly insufficient on its face. For in such a case his lack of entitlement to the exemption does not depend on the board's appraisal of his veracity. He has the burden of both bringing facts establishing his right to an exemption to the attention of the board and also convincing them of his veracity. As long as the impact of the second issue is meaningless, no purpose would be served by insisting on "meaningful" review of that issue.

■ Under the law of this circuit as it had developed prior to the confession of error in Joseph, the Board's failure to explain its rejection of appellant's conscientious objector claim would have been considered harmless since his claim was insufficient on its face.

## II.

Appellant argues, however, that since the board did reopen his classification after he submitted his Form 150, it must have found his claim sufficient on its face, and even if that finding is erroneous, we must accept it. This argument is predicated on the Solicitor General's confession of error in Joseph and is supported by this court's recent decision in United States v. Weaver, 474 F. 2d 936 (7th Cir. 1973). Weaver, however, is distinguishable on a ground which makes the Solicitor General's Joseph analysis inapplicable here.

The approach taken by the Solicitor General in his Joseph Memorandum focuses on the actual basis for the board's rejection of a claimed exemption. Under his reasoning, if the board's denial actually rested on a finding of insincerity, the registrant is entitled to meaningful review of that finding even though the board's assumption that a prima facie case was stated is erroneous.[4] That analysis does not require that a statement of reasons be furnished if it is perfectly clear that the board action rested on a determination that the registrant's claim did not meet the statutory criteria.[5]

4. Frankly, we have some difficulty identifying the legal basis for this analysis. It is not supported by statute, regulation, or our reading of Lemmens, and does not purport to rest on a constitutional requirement. Nevertheless, since this circuit has accepted it, we must of course, respect it.

5. "Upon further consideration, however, we [the Solicitor General] now think it more likely that the board in this case did initially determine (albeit erroneously) that the petitioner prima facie qualified for conscientious objector status, but denied his claim on grounds of insincerity. * * *
"We might feel otherwise if it could be argued here that there were no grounds for questioning petitioner's sincerity, so that the only determination that could possibly have been made on this record was that petitioner's claim did not meet the statutory criteria. In such a situation, the board's decision, whether characterized as a refusal to reopen . . . or as a denial of exemption after reopening . . . would necessarily have been based on a determination that petitioner was not prima facie entitled to conscientious objector status. Consequently, it would not have been obliged to state reasons.
"This combination of factors could well have led the local board to doubt the sincerity of petitioner's professed opposition. Whether or not it is enough to provide a 'basis in fact' (50 U.S.C. App. 460(b)(3)) for denial—a question that is not presented in this case—it is, we think, sufficient to foreclose an argument that on this record the only decision that the local board could possibly have reached in this case is that petitioner's claim on its face failed to meet the statutory standard. In such circumstances, we have felt compelled to the conclusion that the local board, be-

Appellant argues that such a conclusion is foreclosed in this case because the board did reopen his classification, and under the regulations then in effect, a reopening would have been improper unless the board determined that he had stated a prima facie case for exemption.[6]

It is manifest that the board made a procedural error. Either it erroneously made an entry on appellant's record which implied that his classification had been reopened even though the board had not determined that his claim for exemption was sufficient on its face, or else the board erroneously determined that his claim was sufficient and then summarily denied the exemption without appraising his sincerity in a personal interview. Quite clearly, the former is the more reasonable interpretation of this record.

Prior to May 19, 1967, when he submitted his Form 150, appellant was classified I-A. The next entry which appears in his file (SSS Form 100) on August 19, 1967, simply reads, "I-A." App. 13. Since appellant was not invited to appear before the board before August 19, 1967, that entry cannot rea-sonably support the conclusion that the board simultaneously found (a) that the appellant's claim demonstrated that he was entitled to exemption if he was sincere, and (b) that he was, in fact, insincere.[7] We are persuaded, to quote the Solicitor General, "that the only determination that could possibly have been made on this record was that petitioner's claim did not meet the statutory criteria. In such a situation, the board's decision, whether characterized as a refusal to reopen . . . or as a denial of exemption after reopening . . . would necessarily have been based on a determination that petitioner was not *prima facie* entitled to conscientious objector status. Consequently, it was not obliged to state reasons." Memorandum for the United States, *supra*, n.2, page 21.

■ In *Weaver* the registrant made a personal appearance before the board on December 9, 1969, in connection with his request for conscientious objector status. It is entirely possible that Weaver's personal interview caused the board to reach the conclusion that he was

---

cause it reopened and classified anew, did in fact initially determine that the claim placed petitioner *prima facie* within the statutory exemption, but then denied him a I-O classification because it disbelieved him.

"D. CONCLUSION ON STATEMENT OF REASONS ISSUE

"It was, therefore, incumbent on the board to state reasons for its denial under Haughton, and related cases (see pp. 12–13 supra). The fact that the courts might later find that the *prima facie* determination was erroneous cannot excuse it from this requirement. The law on this point is directed to the time when the board makes its initial determination. If it concludes, whether rightly or wrongly, that the statutory criteria of conscientious objection have been *prima facie* met, the grounds for its subsequent reclassification must be stated." Memorandum for the United States, *supra*, n. 2, pages 19–23.

6. 32 C.F.R. § 1625.4 then provided in part:
"When a registrant, any person who claims to be a dependent of a registrant, any person who has on file a written re-quest for the current deferment of the registrant in a case involving occupational deferment, or the government appeal agent files with the local board a written request to reopen and consider anew the registrant's classification and the local board is of the opinion that the information accompanying such request fails to present any facts in addition to those considered when the registrant was classified or, even if new facts are presented, the local board is of the opinion that such facts, if true, would not justify a change in such registrant's classification, it shall not reopen the registrant's classification." 32 C.F.R. § 1625.4 (revised as of January 1, 1968).

7. It should be noted that various grounds for questioning appellant's sincerity which appear in his file after August 19, 1967, shed no light on the board's action on that date—thus we attach no significance to the suggestion that appellant later claimed to be a minister, to be insane, to be physically unfit for service, to be a student, or to his failure to attend scheduled personal appearances before the board.

insincere.[8]  Under the Solicitor General's reasoning in *Joseph*, the registrant was entitled to meaningful review of that conclusion, and the failure to furnish a statement of reasons for the board action dictated reversal of Weaver's conviction.  But in this case, since there was no personal appearance in connection with appellant's request for conscientious objector status, and the entire record before the board relating to that request was limited to the Form 150 itself, the Solicitor General's analysis dictates affirmance.

The judgment is

Affirmed.

---

8. The same circumstance was present in United States v. Hulsey, 463 F.2d 1071, 1075 (7th Cir. 1972), on which *Weaver* relied.