UNITED STATES of America, Plaintiff-Appellee,

v.

Donald Alan BUSH, Defendant-Appellant.

No. 72-1013.

United States Court of Appeals, Seventh Circuit.

June 5, 1974.

---

George C. Pontikes, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Theodore T. Scudder, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, CASTLE, Senior Circuit Judge, and MORGAN, District Judge. *

ROBERT D. MORGAN, District Judge.

The original decision on appeal here affirmed the defendant Bush's conviction for willfully failing to submit to induction under the Selective Service Act. That decision along with Chief Judge Swygert's dissenting opinion were published at 476 F.2d 1094 (7th Cir., 1973). On writ of certiorari to this court, the Supreme Court of the United States, in · its case No. 73–5054, sub. nom., Bush v. United States, 414 U.S. 1019, 94 S.Ct. 441, 38 L.Ed.2d 311, has now vacated the judgment of this court and remanded the cause "for reconsideration in light of the position presently asserted by the Government."

In the Supreme Court, the Government agreed with neither the majority nor dissenting opinion here and acceded to the position that, because he was subsequently reclassified and deferred several times on other grounds, petitioner Bush's failure to exhaust administrative remedies on his conscientious objector claim in 1966 "is not dispositive of his attack on the 1–A classification underlying this prosecution." We now proceed from that starting point and note, in passing, the Government's further position in the Supreme Court that this court had "reached the correct result in this case, although for the wrong reasons."

The 1–A classification underlying this prosecution was adopted by the local board on November 15, 1968, after expiration of the last of several student deferments. On December 12, 1968, abandoning a previous claim for hardship deferment, Bush advised the board that he wished to appeal the 1–A classification because of his conscientious objection, referring to the claim in that regard asserted in 1965, from the denial of which he had taken no appeal.

On January 8, 1969, the board informed Bush that it had scheduled a personal appearance for him on February 25, 1969. He responded that he would be unable to attend this meeting personally, but he enclosed a statement outlining his beliefs in order to aid the draft board in determining his draft status. On February 25, the local board, without stating reasons therefor, declined to reclassify him as a conscientious objector; . it notified him of his 1–A classification by means of Form 110 and accompaning Form 217, which indicated that he had thirty days to appeal

---

* Chief Judge Robert D. Morgan of the Southern District of Illinois is sitting by designation.

the board's decision. Appeal was taken to the State Appeal Board, which agreed that 1–A classification was proper. After other delays not here relevant, Bush was ordered to report for induction on August 13, 1970. He reported as ordered, but refused induction. The conviction here involved followed.

■ Of importance for consideration here is whether the local board's consideration of that written statement on February 25, 1969, and its mailing of a new notice of classification and of appeal rights to him thereafter, necessarily showed a reopening of the classification and reclassification to the same 1–A classification as before, or whether it was, instead, a consideration and refusal to reopen. On this point we agree with the Solicitor General's position in the Supreme Court that application of the notice requirements of Regulation 1624.-2(d) is not dependent on every "personal appearance" being physically in person. As here, having been invited for a personal appearance, Bush accomplished that appearance within the meaning of the regulations by the written statement he chose to supply, instead of coming himself. This construction avoids any necessity of presuming a statement of *prima facie* case of conscientious objection on a reopening which can be said to have occurred only by such unjustified and unnecessary presumption. We conclude that the board refused to reopen on good grounds apparent on the record.

Without such presumed reopening by the local board, the rule of United States v. Lemmens, 430 F.2d 619 (CA 7 1970), does not come into play. Neither is there help for Bush in this circumstance in Joseph v. United States, 405 U.S. 1006, 92 S.Ct. 1274, 31 L.Ed.2d 473 (1972).

There appears to us simply no basis for the conclusion that the board considered that a *prima facie* case of conscientious objection had been presented. The fact that the board recognized the December 12, 1968 letter as a reassertion of the old C–O claim and scheduled a personal appearance thereon indicates

the contrary. It clearly shows acceptance of the responsibility to permit Bush to state a case anew if he could, having failed to do so and having abandoned the effort in 1966. It seems clear that they received his written statement as his appearance and his best effort in this regard and found it less than a *prima facie* case.

■ It remains simply for the court to evaluate the effort as appearing in the record to determine whether in fact it was sufficient to state a *prima facie* case. It is clear that it was not. Bush's written statement in support of his conscientious objector claim, set forth in full in the file, revealed that he relied upon a merely personal moral code based upon essentially philosophical views (see 50 U.S.C.App. § 456(j)). These views are not the sort which were considered equivalent to orthodox religious views in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733, and Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308. A *prima facie* case of conscientious objection was clearly never presented anywhere.

Upon reconsideration on remand as aforesaid, the judgment of the district court, for the reasons stated, is again

Affirmed.

SWYGERT, Chief Judge (dissenting).

The majority holds that the defendant failed to state a *prima facie* case as a conscientious objector. I cannot agree and must therefore respectfully dissent.

The controlling law in this circuit with regard to the question before us was stated in United States v. Lemmens, 430 F.2d 619, 624 (7th Cir. 1970):

We are persuaded that where the validity of a classification rejecting a claim as conscientious objector is in issue, and where the registrant described a belief which *on its face* fulfilled the legal requirements, the board did not state its reason for rejection, and the court cannot otherwise determine with any degree of assurance that the decision really made

by the board properly supported the rejection and had a basis in fact, the court should hold the classification invalid. [Emphasis added].

I would hold that defendant has more than satisfied the requirements for presentment of a *prima facie* attainment of conscientious objector status. In Clay v. United States, 403 U.S. 698, 700, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971), the Supreme Court detailed the three basic requirements which defendant must meet. He must show: (1) that he is conscientiously opposed to war in any form; (2) that his objection is sincere; and (3) that his opposition is based upon religious training and belief. It would appear that defendant has adequately fulfilled the first two requirements. Indeed, the majority's challenge to the defendant's claim for conscientious objector status centers solely on the third requirement. In rejecting defendant's claim the majority says that:

> [Defendant's] statement . . . revealed that he relied upon a merely personal moral code based upon essentially philosophical views. . . . These views are not the sort which were considered equivalent to orthodox religious views in United States v. Seeger, 380 U.S. 163, [85 S.Ct. 850, 13 L.Ed.2d 733], and Welsh v. United States, 398 U.S. 333 [90 S.Ct. 1792, 26 L.Ed.2d 308].

I believe the majority misreads the *Seeger* and *Welsh* decisions. Here defendant's opposition to war stemmed not from a religious belief in a supreme deity; rather it emanated from a moral and ethical belief grounded on his longstanding and religious-like convictions and commitment to honor, truth, and human worth. That defendant's objection to all war was forged from religious beliefs has been more than amplified in the Supreme Court's decision in Welsh v. United States, 398 U.S. 333, 339–340, 90 S.Ct. 1792, 1796, 26 L.Ed.2d 308 (1970), where it was stated with respect to religious belief:

> The Court made it clear [in *Seeger*] that these sincere and meaningful beliefs that prompt the registrant's objection to all wars need not be confined in either source or content to traditional or parochial concepts of religion. It held that § 6(j) "does not distinguish between externally and internally derived beliefs," *id.*, at 186, [85 S.Ct., at 864] and also held that "intensely personal" convictions which some might find "incomprehensible" or "incorrect" come within the meaning of "religious belief" in the Act. *Id.*, at 184–185, [85 S.Ct. at 863–864].

What is necessary under *Seeger* for a registrant's conscientious objection to all war to be "religious" within the meaning of § 6(j) is that this opposition to war stem from the registrant's moral, ethical, or religious beliefs about what is right and wrong and that these beliefs be held with the strength of traditional religious convictions. Most of the great religions of today and of the past have embodied the idea of a Supreme Being or a Supreme Reality—a God—who communicates to man in some way a consciousness of what is right and should be done, of what is wrong and therefore should be shunned. If an individual deeply and sincerely holds beliefs that are purely ethical or moral in source and content but that nevertheless impose upon him a duty of conscience to refrain from participating in any war at any time, those beliefs certainly occupy in the life of that individual "a place parallel to that filled by . . . God" in traditionally religious persons. Because his beliefs function as a religion in his life, such an individual is as much entitled to a "religious" conscientious objector exemption under § 6(j) as is someone who derives his conscientious opposition to war from traditional religious convictions.

Applying this standard to Seeger himself, the Court noted the "compulsion to 'goodness'" that shaped his total opposition to war, the undisputed sincerity with which he held his views, and the fact that Seeger had

"decried the tremendous 'spiritual' price man must pay for his willingness to destroy human life." 380 U. S., at 186–187, [85 S.Ct. at 864].

The majority holds that the defendant's opposition to war was nurtured by a mere "personal moral code based upon essentially philosophical views" which consequently excludes him from a conscientious objector exemption. With respect to exclusion from exemption as a conscientious objector due to philosophical or personal views the Supreme Court in *Welsh* held:

> We certainly do not think that § 6(j)'s exclusion of those persons with "essentially political, sociological, or philosophical views or a merely personal moral code" should be read to exclude those who hold strong beliefs about our domestic and foreign affairs or even those whose conscientious objection to participation in all wars is founded to a substantial extent upon considerations of public policy. The two groups of registrants that obviously do fall within these exclusions from the exemption are those whose beliefs are not deeply held and those whose objection to war does not rest at all upon moral, ethical, or religious principle but instead rests solely upon considerations of policy, pragmatism, or expediency. In applying § 6(j)'s exclusion of those whose views are "essentially political, sociological, or philosophical" or of those who have a "merely personal moral code," it should be remembered that these exclusions are definitional and do not therefore retrict the category of persons who are conscientious objectors by "religious training and belief." Once the Selective Service System has taken the first step and determined under the standards set out here and in *Seeger* that the registrant is a "religious" conscientious objector, it follows that his views cannot be "essentially political, sociological, or philosophical." Nor can they be a "merely personal moral code."

See United States v. Seeger, 380 U.S., at 186, [85 S.Ct. at 864].

Welsh stated that he "believed[d] the taking of life—anyone's life—to be morally wrong." . . . On the basis of these beliefs and the conclusions of the Court of Appeals that he held them "with the strength of more traditional religious convictions," 404 F.2d at 1081, we think Welsh was clearly entitled to a conscientious objector exemption. 398 U.S. at 342–343.

In my view defendant's objection to war was not spawned by "considerations of policy, pragmatism, or expediency." Accordingly, I would reverse.