UNITED STATES of America, Plaintiff,

v.

Bobby Marion BATSON, Defendant.

No. 6209.

United States District Court, W. D. Missouri, S. D.

Nov. 29, 1971.

Paul Anthony White, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

John C. Crow, Springfield, Mo., for defendant.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

This is a jury-waived Jehovah Witness conscientious objector Selective Service case. It is submitted on the stipulation of the parties which establishes that the defendant did not report for induction after receipt of an order which, if valid, required that he do so. The only other relevant evidence before the Court is defendant's Selective Service file.

The government initially resisted a motion to dismiss the indictment on the theory that (a) the defendant had not made a prima facie case to be classified as a conscientious objector and (b) he had failed to exhaust his administrative remedies by failing to exercise his right of administrative appeal. In its post-trial brief, the government apparently concedes that there was no basis in fact for the denial of defendant's classification as a conscientious objector and that the only theory upon which the defendant may be convicted must be based upon the fact that the defendant failed to exhaust his available administrative remedies by not filing an administrative appeal which the law permits but does not require him to take.

It is clear that defendant did in fact make a prima facie case for a I–O classification. Furthermore, there is nothing in the defendant's Selective Service file which could be said to afford a basis in fact for the denial of that classification or for defendant's I–A classification. We so find and conclude in accordance with principles articulated in Estep v. United States, 327 U.S. 114, 123, 66 S.Ct. 423, 90 L.Ed. 567 (1946), and Dickerson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132, (1953).

We cannot, under the meager factual circumstances presented by the stipulation of the parties, sustain the government's contention that the Local Board's failure properly to follow long-established principles of law is to be excused on the theory that the defendant did not appeal a classification void on the face of his Selective Service file.

To support its failure to exhaust argument, the government relies primarily upon McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). That case, of course, held that the doctrine of exhaustion could not properly be applied to a case involving a sole-surviving son exemption. The government, in apparent recognition that the case is distinguishable on its facts, did not cite McGee v. United States, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971), a case in which a conscientious objector claim was refused judicial review.

*McGee* makes clear that the government's contention based on *McKart* is not tenable. Certiorari was granted in *McGee* for the purpose of determining whether the Second Circuit's application of the exhaustion doctrine had been proper under the factual circumstances presented in that case. *McKart* had made clear that the doctrine of exhaustion "is, like most judicial doctrines, subject to numerous exceptions." (395 U.S. at 193, 89 S.Ct. at 1662), and that neither that case nor any other case decided by the Supreme Court could be said to "stand for the proposition that the exhaustion doctrine must be applied blindly in every case" (395 U.S. at 201, 89 S.Ct. at 1666).

The Second Circuit in *McGee* recognized the existence of a long line of cases which hold that under the circumstances presented in a particular case, "neglecting to appeal is not a bar to judicial review of classification if the registrant's failure was justified." United States v. McGee, 426 F.2d 691, 700 (2nd Cir., 1970). The Second Circuit, however, determined that the "exceptional circumstances" doctrine should not be applied in regard to the particular registrant involved in *McGee* because, among other things, the registrant "had advised the local board in no uncertain terms that he would not read anything they sent him, and would not have appealed no matter what he was told." (426 F.2d at 700).

The Supreme Court, in affirming the Second Circuit in *McGee*, reiterated that "*McKart* stands for the proposition that the doctrine [of exhaustion] is not to be applied inflexibly in all situations * * *." (402 U.S. at 483, 91 S.Ct. at 1568). On the facts presented in *McGee*, the Supreme Court agreed with the Second Circuit that a "somewhat extreme situation is indeed presented by the circumstances of the present case." It noted in particular that "McGee's failure to pursue his administrative remedies was deliberate and without excuse." (402 U.S. at 491, 91 S.Ct. at 1572).

The Supreme Court affirmed the Second Circuit's application of the exhaustion doctrine under the particular circumstances presented for the reason that "it is not fanciful to think that 'frequent and deliberate flouting of the administrative process' might occur if McGee and others similarly situated were allowed to press their claims in court despite a dual failure to exhaust." (402 U.S. at 491, 91 S.Ct. at 1572).

The difficulty with the government's argument in this case is that the evidence adduced by the government does not show that the defendant in this case was similarly situated with registrants such as McGee. There is no evidence that this defendant attempted to flout or bypass the Local Board. Indeed, the first time this defendant appeared in court his counsel suggested that he had but a "limited understanding" of how he should have proceeded and that "he was not really too aware of how he should pursue [his conscientious objector claim]" (See transcript of May 14, 1971, pp. 3–4).

The defendant's Selective Service file shows that the Local Board was under the unsupported and apparently erroneous impression that the defendant would not perform alternative service as authorized and required by law. (See the letter of June 25, 1971, written to counsel in this case by the Local Board). It perhaps could also be said in this case that the Local Board had but a limited understanding of the grounds upon which it could base a denial of the defendant's conscientious objector claim.

In the June 25, 1971 letter, the Local Board stated as its reason why it was justified in refusing to reopen the defendant's file for the purpose of determining whether the defendant was in fact sincere in regard to his claim of conscientious objector status: "This Local Board * * * agreed that the registrant had had opportunities to pursue his claim prior to the issuance of the induction order."

It is apparent that if the Local Board could refuse to reopen for the reason which it stated and that if the government's exhaustion argument is sustained, then every registrant who does not perfect the administrative appeal which the law permits, but does not require, will be automatically denied any and all chance of judicial review of a Local Board's unauthorized classification, regardless of what other circumstances may be presented in a particular case. We cannot accept the notion that the principles applicable to the judicially created doctrine of exhaustion command such an automatic result.

There simply is nothing in the meager evidence adduced in this case to support any finding that the defendant did in fact attempt to bypass or otherwise flout the Selective Service System. The government does not even contend that he did so. Certainly it did not attempt to adduce any evidence to support such a contention. The government's argument for conviction rests upon the untenable notion that the judicially created doctrine of exhaustion is to be blindly applied in all cases in which a registrant fails to exercise his right to an administrative appeal. Both *McKart* and *McGee* prohibit any such application of the exhaustion rule or its many recognized exceptions.

We recognize, of course, that the defendant was sent the now standard Form 217 which contained advice that a Government Appeal Agent was available "to advise you concerning your right to a personal appearance, your right of appeal, or any other procedural right or process." But neither that notice nor any other notice advised the defendant that the government, in a subsequent criminal case, might contend that his failure to administratively appeal would deprive him of all right to have a judicial review of the validity of his classification. Mr. Justice White emphasized in his concurring opinion in *McKart* that the Congress had not chosen to require exhaustion as a prerequisite to judicial review. See 395 U.S. at 206.

And the Supreme Court certainly did not intimate in either *McKart* or *McGee* that the judicially created doctrine of exhaustion is to be blindly applied to every conscientious objector case regardless of the factual circumstances presented. Indeed, as we have noted, the teaching of those cases is precisely to the contrary.

United States v. McNeil, 401 F.2d 527 (4 Cir., 1968), is an example of a Jehovah Witness conscientious objector case in which the Fourth Circuit, in effect, adopted the exhaustion argument presented by the government in this case. That case affirmed a conviction on the theory that neither the district court nor the court of appeals was "free to consider McNeil's earlier and unappealed claims to classification as a conscientious objector." (401 F.2d at 529). That case also noted that "McNeil has offered no explanation whatsoever for his failure to appeal from the denial of his claimed status as a conscientious objector." (401 F.2d at 529).

The Supreme Court granted *certiorari*, summarily vacated the judgment, and remanded the case directly to the district court for further consideration in light of *McKart*. See McNeil v. United States, 395 U.S. 463, 89 S.Ct. 2025, 23 L.Ed.2d 446 (1969).

In the later case of United States v. Davis, 413 F.2d 148 (4th Cir. 1969), the Fourth Circuit made specific reference to the Supreme Court's action in *McNeil*, in support of its conclusion that:

Some of the sanctity that the inferior federal courts have seemed to put around the judge-made doctrine of exhaustion of administrative remedies has, in the context of selective service cases, been removed by the very recent opinion of the United States Supreme Court in McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (May 26, 1969). [413 F.2d at 150]

In sum, it was concluded that:

We think *McKart* undermines the rule in this and other circuits that in

conscientious objector and ministerial status cases the district court ordinarily need not examine the selective service file to determine whether or not there exists a basis in fact for the 1–A classification unless the registrant has appealed to the Administrative Appeal Board. [Ibid, at 151].

Under the circumstances presented in *Davis*, it was determined that the doctrine of exhaustion should not be applied; that the defendant was not under duty to show why he did not appeal; and that the judgment should be reversed outright because the validity of the defendant's conviction was simply undermined by the government's failure to establish the validity of defendant's 1–A classification. The 1–A classification in that case, as the defendant's classification in this case, simply could not be said to be founded upon any basis in fact.

Under the evidence presented in this case it is apparent on the face of the defendant's Selective Service file that the Local Board totally failed to process a registrant's prima facie conscientious objector claim in accordance with long-established applicable law and that its 1–A classification was unsupported by any basis in fact. To send a registrant to prison without proof of something more than an unexplained failure to administratively appeal would constitute but a blind application of the exhaustion doctrine. Such a course is not permissible under the controlling decisions of the Supreme Court.

■ It is clear from our acquittal of this defendant in this case that we accept the implicit rationale of the cases we have discussed in regard to the burden of proof which rests upon the government to prove that some sort of special circumstances must be found to exist if it intends to argue that judicial review of an invalid 1–A classification is to be foreclosed by proper application of the doctrine of exhaustion. Cf. United States v. Brady, No. 71–19–C (D.Mass., May 4, 1971), 4 SSLR 3126.

This means, of course, that in a case in which the registrant does not administratively appeal a classication which, on the face of the Selective Service file is without a basis in fact, it will be necessary, under ordinary circumstances, for the government to adduce more evidence than simply the registrant's Selective Service file and a stipulation that the defendant failed to report or failed to take the traditional step forward.

Jehovah's Witnesses' cases have plagued the Selective Service System and the federal judicial system for years. It was almost six years ago that we attempted to point out that at least part of the confusion which has arisen in regard to cases involving this sect springs not from secrecy but rather from lack of information. See United States v. Stidham, (W.D.Mo. 1965) 248 F.Supp. 822, 840. We there directed attention to the power of Local Boards to subpoena witnesses to testify and to require both the registrant and witnesses to produce documents in order that a basis in fact be established to support a Local Board's ultimate classification.

In cases involving failures to administratively appeal denials of conscientious objector classification, Local Boards, if they desire to avoid the narrow judicial review of their classification which would otherwise be present, would be well advised to establish some sort of factual basis upon which the courts could make proper application of the exhaustion doctrine. We believe that in order for the government to prevail it should be able to prove that a particular defendant knowingly and intelligently attempted to bypass or otherwise flout his available administrative review after he had been fairly advised of the possible consequences of such action. Under proof of those circumstances, the government would be in a position to urge that the exhaustion doctrine should be applied.

Although the language in *Davis* was used in a different context, we believe that what was said in that opinion generally states the sort of advice which

should be given a registrant if the government expects to subsequently sustain a contention that the exhaustion doctrine should be applied in a particular case: "If an Appeal Agent does nothing more than advise a registrant that he may lose his right to contest his classification when he is criminally prosecuted in the district court by failure to administratively appeal, it would seem to be worthwhile." [413 F.2d at 151]. See also and compare United States v. Harris, (D.Ore., 1968), 302 F.Supp. 1194.

For the reasons stated, it is

Ordered that this memorandum opinion shall be considered our findings and conclusions pursuant to Rule 23(c) of the Rules of Criminal Procedure. It is further

Ordered that the defendant should be and is hereby determined to be not guilty. It is further

Ordered that defendant's acquittal of this present charge is without prejudice to the Local Board's right to reopen defendant's case and to process his claim for conscientious objector classification in accordance with law.