**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Layne Ronald RABE, Defendant-Appellant.**

**No. 71–1419.**

United States Court of Appeals, Seventh Circuit.

Argued May 24, 1972.

Decided Aug. 11, 1972.

Michael P. Toomin, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., William T. Huyck and Donald C. Shine, Asst. U. S. Attys., Donald Guritz, Regional Counsel, Selective Service System, Chicago, Ill., for plaintiff-appellee.

Before Mr. Justice CLARK,* KNOCH, Senior Circuit Judge, and KILEY, Circuit Judge.

CLARK, Associate Justice.

■■ Rabe was convicted before the court without a jury for failing to report for induction into the armed serv-

---

* Associate Justice Tom C. Clark, United States Supreme Court, Retired, is sitting by designation.

ices and was sentenced to three years' imprisonment. On this appeal, he contends that his local board had no basis in fact for rejecting his claim to conscientious objector status and that his classification as I–A, his order to report for induction, and thus conviction are invalid. The Government responds that Rabe is barred from challenging his classification since he failed to take an administrative appeal from the decision of the local board. Ordinarily this is true but under the circumstances of this case, we find that Rabe's failure to appeal does not bar a challenge to his classification. Reaching the merits, we find that the Board's order to report was invalid because Rabe's *prima facie* claim to conscientious objector status was rejected by it without a statement of reasons. The conviction must therefore be reversed and the indictment dismissed.

1. Rabe began attending Bible meetings with Jehovah's Witnesses at the age of seven years. Shortly thereafter he began attending the Kingdom Hall of Jehovah's Witnesses in Freeport, Illinois. At the age of fourteen years he enrolled in the sect's School of Ministry where he not only spoke to the congregation, but preached its teachings from door to door in the community. At the time of his application for conscientious objector status in 1966 he had been continuously associated with the Jehovah's Witnesses for some twelve years. He detailed all of this data in his classification questionnaire (SSS # 100) as well as the Special Form (SSS 150). He described the nature of his beliefs [1] and as to the use of force stated that he did "not believe in the use of any force except on the basis of self protection, then only to the extent of freeing myself from an attacker."

2. Rabe established a *prima facie* case for conscientious objector status. First, he asserted his conscientious opposition to war in any form, Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971); second, he alleged that his opposition was based on religious training and belief as construed in Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970) and finally, his statements make clear that his beliefs were sincerely held by him. Clay v. United States, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971). In order to defeat such a claim there must be a lawfully cognizable basis in fact to the contrary, United States v. Joyce, 437 F.2d 740 (7 Cir. 1971), ap-

---

1. Appellant described the nature of his beliefs as follows:

"I am a Christian and I believe that God exists and is Almighty. I try to put Jehovah, my God, first above anything else. That is why I am objecting to any type of armed service on my belief in religion. In doing so I am following one of the basic Ten Commandments "Thou shalt not kill." Anyone who believes in the Bible surely knows this and there can not be any exceptions to the word of God.

"When Cain killed Able, was he not punished for it. His punishment in the end was death without hope of ever being resurrected. I do not wish to be like Cain, and killing your fellow man and brother would show no favor in Jehovah's eyes.

\*   \*   \*   \*   \*

"Some people do believe that they are pleasing God by killing, but how can this be true when he clearly states do not kill. The day is coming when Jehovah will settle all the wars and his government will rule the earth and killing will not be even spoken about. If it was Jehovah's will that I kill my brother I would do so. Since I believe that killing is not to be done I must refuse to go to the service.

\*   \*   \*   \*   \*

"This best describes our creed, 'And he will render judgment among the nations and set matters straight respecting many people. And they will beat their swords into plowshares and their spears into pruning shears. Nations will not lift up sword against nation. Neither will they learn war any more.'

"I believe that Jehovah will settle all the wars and does not want me to do it for him. Jehovah will wipe away every tear from their eyes, pain, suffering and death will be no more. I truly believe that this time is very near and I am hopefully awaiting the day of Armageddon when God's new order will take over and it will end all wars."

pearing in Rabe's file, United States v. Stetter, 445 F.2d 472 (5 Cir. 1971).

3. However, the local Board rejected Rabe's claim in August, 1966, without any such evidence to the contrary being in the file and without stating any reason in its denial. No appeal was perfected and in April, 1968, Rabe was ordered to report for induction. In May, 1968, Rabe's mother wrote the Board advising "We don't know to much about this appeal thing, except we didn't think that it would do any good. However if the board wants to take it under consideration, we would appreciate it . ." The Board then forwarded the file to the State Director for Selective Service in October, 1968. He recommended that Rabe be called for a personal interview and thereafter the Board again rejected his claim without stating any reasons. On October 15 he was notified of his classification and his right of appeal as well as the availability of a Government Appeal Agent to aid him. On the 16th Rabe wrote a memo for his file "to confirm our meeting of Monday night Oct. 14." In it he again stated that because of "religious convictions" he refused "to take part in any war effort or to bear arms against my fellow brother." The Board sent him a postcard on Oct. 17, 1968, asking him to report to its office. The file indicates that the Executive Secretary of the Board felt that he had not "stated everything in his letter that was said at the Board meeting". Rabe again appeared on October 18 and in the presence of the Executive Secretary wrote another memo, stating that "being a Jehovah Witness" he "did not report for induction because I felt it would be a waste of time being I would not accept the draft anyhow." He also stated that he "did not appeal for a different classification because I felt it would not be acknowledged." On December 9, 1968, Rabe was ordered to report for induction on January 22, 1969, at 4:30 a. m.

On January 20 he wrote the Board: "Mrs. Slamp [the Executive Secretary] asked if I would write a letter if I intended to show up for induction. I am still sincere in what I believe, so I will not be reporting for induction." [2]

This prosecution followed Rabe's refusal to be inducted. The Government offered Rabe's Selective Service file in evidence at the trial and then rested its case. Rabe moved for acquittal, insisting that the file itself presented a *prima facie* case for his classification as a conscientious objector and that the order for his induction was, therefore, invalid. The court found that it was not necessary "to determine whether the Local Board had any basis in fact for its refusal to grant the defendant a I–O classification because the defendant did not avail himself of his right to appeal the decision of the Local Board to the State Appeal Board," citing United States v. Smogor, 415 F.2d 296 (7 Cir. 1969), and United States v. Kurki, 384 F.2d 905 (7 Cir. 1967). The Court distinguished McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), where the question was one of statutory construction, not conscientious objection.

4. It is true that the Court has refused to consider challenges to the classification of registrants unless and until administrative remedies have been exhausted, Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305 (1944); Estep v. United States, 327 U. S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); however, in post-induction proceedings the Court has found universal agreement that "the doctrine is not to be applied inflexibly in all situations. . . ." McGee v. United States, 402 U.S. 479, 483, 91 S.Ct. 1565, 1568, 29 L. Ed.2d 47 (1971). In weighing the factors pro and con of "the harsh impact of the doctrine when it is invoked to bar any judicial review", at 484, 91 S.Ct. at 1569, the Court concluded that the prob-

---

2. The record gives no indication that Rabe failed to cooperate with the Local Board in handling his claim. As his mother stated in her letter to the Board:

"We follow the law as far as possible as long as it doesn't go against the law or commands of God."

lem "should be assessed in light of a discrete analysis of the particular default in question, to see whether there is 'a governmental interest compelling enough' to justify the forfeiting of judicial review." At 485, 91 S.Ct. at 1569.

The District Courts and the Courts of Appeals have struggled to attain "a discrete analysis" in each case based upon the test of whether "the governmental interest" is "compelling enough" to require the exhaustion of administrative remedies. It may be said that in the absence of exceptional circumstances, the doctrine will be applied as it was by the trial court here. United States v. Hernandez, 453 F.2d 297 (5 Cir. 1971) (no *prima facie* case, no personal appearance, no procedural defects, no appeal); United States v. Smogor, *supra* (conscientious objector claim filed *after* refusal to report); United States v. Kurki, *supra* (no administrative challenge to I–A classification); Ashton v. United States, 404 F.2d 95 (8 Cir. 1968) ("no exceptional circumstances"); Lockhart v. United States, 420 F.2d 1143 (9 Cir. 1969) ("no exceptional circumstances"). However, a body of exceptions continues to grow where the registrant presents a *prima facie* claim to I–O classification and the refusal by the Board is without explanation or reason and an appeal would be repetitious, fruitless and of no avail. Glover v. United States, 286 F.2d 84 (8 Cir. 1961) (Local Board had rejected the claim five times and four previous appeals had been made); United States v. Davis, 413 F.2d 148 (4 Cir. 1969) (Local Board notified registrant of right of appeal but not the availability of a Government Appeal Agent); United States v. Eades, 430 F.2d 1300 (4 Cir. 1970) (Board rejected the conscientious objector claim because the registrant said he did not believe in a

Supreme Being); United States v. Batson, 334 F.Supp. 971 (W.D.Mo. Nov. 29, 1971) (registrant had little understanding of his rights and no showing that he was flouting the administrative process.[3]

5. As we read the record, the Local Board's classification of Rabe as I–A lacks any basis in fact. The answers set out in long hand in the Form SSS 150 clearly establish all of the criteria necessary for a I–O classification. Moreover, there is not a word in the file to the contrary. We do not know what was stated at the interview in October, 1968, but Rabe's summary of it fully supports his claim. It shows that his claim had none of the typical flaws, *i. e.*, insincerity, late blooming, strong political motivation or lack of religious belief and training. The claim is simple, direct and free from doubt. The need for administrative expertise is minimal. United States v. Davis, *supra*; United States v. Davila, 429 F.2d 481 (5 Cir. 1970). Indeed, if anything, the classification showed callousness or lack of expertise on the part of the Board to such an extent that it would have been utterly futile to expect it to ever grant the claim.

6. The Local Board handling of the case was superficial at the best and ill-advised at the least. Glover v. United States, *supra*; United States v. Williams, 420 F.2d 288 (10 Cir. 1970); United States v. Davis, *supra*. The imperious manner in which it entered a flat denial of Rabe's claim without stating any grounds, reason or explanation deprived Rabe of any meaningful appeal. See United States v. Lemmens, 430 F.2d 619, 622–624 (7 Cir. 1970). As the Solicitor General recently stated in confessing error in Joseph v. United States, vacated and remanded 405 U.S. 1006, 92

---

3. "We believe that in order for the government to prevail it should be able to prove that a particular defendant knowingly and intelligently attempted to bypass or otherwise flout his available administrative review after he had been fairly advised of the possible conse-quences of such action. Under proof of those circumstances, the government would be in a position to urge that the exhaustion doctrine should be applied." United States v. Batson, *supra*, 334 F. Supp. at 975.

S.Ct. 1274, 31 L.Ed.2d 473 (March 27, 1972),

> "The underlying rationale of these decisions, although variously formulated, is that some statements of reasons for a Board's classification is necessary to 'meaningful' review, (Cf. Gonzales v. United States, 348 U.S. 407, 415, 75 S.Ct. 409, 99 L.Ed. 467) of the administrative determination both by the State Appeals Boards and by the courts."

See also memorandum for the United States in Lenhard v. United States, vacated, 405 U.S. 1013, 92 S.Ct. 1296, 31 L.Ed.2d 477 (1972). It would be both ironic and frustrating if the Government was permitted to prevail in a case because the registrant did not appeal when the Government itself had rendered an appeal futile. Indeed, the last two sentences in his resume of the October 14, 1968 conference with the Board written in his scribbling hand and received by the Board on October 16, stated: "I am sure you gentlemen know what is right and whatever you decide *will be the way it has to be.* I will be expecting a letter later this week." (Emphasis supplied) The letter never came; only a notice of classification as I–A. Again and again he had presented a *prima facie* case in the most simple words; he had furnished the names of two witnesses to substantiate his claim; time and again he had been rebuffed without the Board calling a witness and without explanation. It is little wonder that this high school student thought the Board had given the final word; and in the final analysis it was and always will be unless courts sit to make sure that Boards "know what is right." See United States v. Broyles, 423 F.2d 1299, 1305–1306 (4 Cir. 1970); United States v. Washington, 392 F.2d 37, 39 (6 Cir. 1968).

The importance of the Local Board giving its reasons or explanation is illustrated not only by the confession of the Solicitor General, *supra,* but also by Congressional Act, P.L. 92–129, 92d Cong., 1st Sess. (Sept. 28, 1971) and by the national rules and regulations of the Selective Service itself that were recently adopted. 32 C.F.R. 1623.4(c), 36 F.R. 23378 (Dec. 9, 1971). This emphasizes the fatal impact on the administrative process of this failure of the Local Board to furnish grounds for its decision rejecting Rabe's claim of conscientious objection. This is the more fatal in this class of draft case since the Board may be going off on a ground that the registrant might cure by additional evidence.

7. In addition, the State Director's Office handling of this case was ineffective. It had the entire file of Rabe and could see by reading it that he had made out a *prima facie* case. Instead of so advising the Local Board and suggesting that it seek out evidence to the contrary, the State Office suggested that the case be re-opened and the registrant—who was not even a high school graduate—be called in for an interview. The State Office did not, however, advise the Board to call witnesses whom Rabe had suggested to support his claim and any other persons who could throw light on the case. It is reasonable to assume that the State Office realized that Rabe had submitted a *prima facie* case, otherwise it would not have suggested that the case be re-opened. Still, the Office did not follow through with the necessary guidance for the Local Board's own protection as well as that of Rabe. The State Office also failed to instruct the Board to give reasons for its decision.

The Selective Service System has had more than ample opportunity in this case to "make a factual record." Rabe's claim was complete—it stated a *prima facie* case—it gave the names and addresses of two witnesses in support of the claim; and the Local Board was given two opportunities to complete the file. It failed in both instances, relying entirely on its flat denial without explanation, grounds or reasons. And this in the face of his final plea: "If you read the form over you already know that I am a conscientious objector and

must refuse to serve in the armed forces, as I must obey God as ruler in this case as killing is against our belief."

8. Finally the record casts very serious doubt as to whether Rabe fully understood his right to appeal and the consequences of his failure to do so. See United States v. Harris, 302 F.Supp. 1194 (D.Or.1968); United States v. Batson, *supra*. His mother's letter to the Local Board in May 1968 indicates a lack of understanding of the administrative process and of the distinction between the Local Board and the Appeal Board. See United States v. Williams, 420 F.2d 288 (10 Cir. 1970). Although Rabe was subsequently advised of his right to appeal the second determination, his summary of the personal appearance with the Board, written contemporaneously with this explanation of his rights, suggests that he did not grasp the distinction between the first appeal and the second or between the Local Board and the Appeal Board. In this summary, he referred to his failure to appeal the Board's first classification:

> "I did not appeal for a different classification because I felt it would not be acknowledged."

The district judge read this statement to indicate that Rabe understood his right to appeal and decided against it because he felt his chances were not good. Tr. 29. The Government also notes this statement, suggesting that it proves "he knew about his right to appeal." Our examination of the statement leads us to the opposite conclusion. Appellant states that he did not appeal *for a different classification*. Rabe was probably speaking of a ministerial classification, IV–D, since he had since childhood participated in the ministry of the Jehovah Witnesses and was then a part-time student preparing for the ministry, and had advised the Board on October 18, "I could not accept a I–O classification either as it too would interfere with my beliefs." It is therefore clear that his statement indicates a serious misunderstanding of the Selective Service System's administrative process, for Rabe would not "appeal" for a ministerial classification to the Appeal Board, he would apply for it at the Local Board. Moreover, Rabe's explanation of his "options" would seem to suggest that he believed that the Board's rejection of his CO claim left him only with the possibility of a ministerial claim, a claim to which he considered himself not to be entitled. If we are correct on this point, Rabe's failure to exhaust was due to his belief that further appeals for other classifications were futile. See Glover v. United States, *supra*. This explanation comports with his references to the finality of the Local Board ("whatever you decide is the way it will have to be") and his characterization of being sent to prison as a result of the Local Board's rejection of his claim. This sense of finality in the Board's decision is inconsistent with a proper understanding of his right to appeal.

While we are unwilling at this time to adopt the broad rule suggested in United States v. Batson, *supra*, we believe that in this case, where the record raises such substantial doubt as to appellant's knowing and intelligent waiver, the Government was required to go forth with evidence proving knowledge. This the Government failed to do.

9. Having examined the merits of Rabe's claim and concluded that he presented the Local Board with a *prima facie* case and that the Board rejected his claim out of hand without stating any reason, we believe that under the circumstances here it is not necessary for Rabe to exhaust his administrative remedies. This being true, the arbitrary action of the Board invalidates his classification and his conviction must fall. United States v. Lemmens, *supra*, 430 F.2d at 623–624. We therefore need not reach appellant's challenge to the sentencing procedure in the district court.

The judgment is reversed and the cause is remanded with directions to dismiss the indictment.