**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Gerald Alan BORKENHAGEN, Defendant-Appellant.**

**No. 71–1815.**

United States Court of Appeals, Seventh Circuit.

Argued June 16, 1972.

Decided Sept. 19, 1972.

Rehearing En Banc Denied Oct. 18, 1972.

Robert N. Clinton, Frank W. Oliver, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Gordon B. Nash, Jr., Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before FAIRCHILD, CUMMINGS and STEVENS, Circuit Judges.

CUMMINGS, Circuit Judge.

Defendant was indicted for willfully and knowingly refusing to submit to induction into the armed forces in violation of 50 U.S.C. App. § 462. The jury returned a verdict of guilty and he was sentenced to four years' imprisonment. We affirm.

On October 15, 1964, his Local Board in Des Plaines, Illinois, classified defendant 1–A. On February 10, 1966, he was given a 2–S student deferment which he retained until December 14, 1967. He was then classified 1–A on February 13, 1968. He was ordered to report for induction on March 4, 1968, but failed to appear at the induction station. Pursuant to a written request, defendant was granted a courtesy interview on December 5, 1968. According to the Local Board's report of the interview, defendant said "he will not serve, or will have anything to do with the system of the country," and he was thereupon advised of his rights and told he would be prosecuted.[1]

On December 23, 1968, the Board declared defendant a "delinquent" and sent him a letter to report for induction on January 20, 1969. Four days prior to the scheduled induction, defendant wrote the Board a letter complaining that it should have read a book entitled *In The Name of America*[2] and other material which he had previously sent the Board. Then came the following paragraph now relied upon by defendant:

"Had you read *In The Name of America* you would have learned why many people, myself, included, object on moral, ethical, and religious grounds to engaging in military service. This is a matter of conscience. My conscience tells me that it is evil for persons of different nations to wage wars upon one another. Not merely that it is wrong in individual instances, and perhaps right in others, but always wrong, always evil, always in violation of the laws of the universe and the laws of conscience. The book which I wanted you to read might have provided that understanding."

Accompanying the letter were several documents consisting of anti-war reflections on the Viet Nam conflict and including the book *Dr. Spock on Viet Nam*, which the defendant wrote "are intended as part of this letter, and should be read as such." The letter did not request a change in defendant's classification nor did it ask for an SSS Form 150 for conscientious objectors. Nothing in the file showed that he "claimed any other classification" than 1–A, according to the witness testifying about the contents of his Selective Service file.

Defendant appeared for induction on January 20, 1969, but allegedly refused to submit to induction, so that the Selective Service System recommended his prosecution to the United States Attorney for the Northern District of Illinois. However, on May 7, 1970, the Selective Service System advised the Local Board to remove defendant's delinquency in accordance with Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L. Ed.2d 532, holding that it was improper to accelerate the induction of delinquent registrants. Consequently, on Septem-

---

1. Defendant's testimony about this courtesy interview varied only in that he stated "I told them that I didn't feel that I could serve in any compulsory system but that I wanted to serve my country as I saw fit." Although he examined his Selective Service file at least six times thereafter, defendant never complained of the Local Board's report.

2. The book was a 421-page softbound edition, published by The Turnpike Press, Inc., 1968.

ber 9, 1970, the Local Board advised defendant that it had reviewed his file at its June 11, 1970, meeting and had removed his delinquent status and cancelled his induction order. Defendant was informed he would be processed in his regular turn.

On September 29, 1970, the Board ordered defendant to report for induction on October 27, 1970. He was preliminarily processed for induction on that date but admittedly refused to step forward to take the oath when his name was called on two or three occasions. Before being asked to take the traditional step forward, defendant requested that Captain James Ohlson, the officer in charge at the induction station, read and sign a letter prepared by defendant stating that "by submitting to induction, [he] does not waive defects in the procedure leading to his induction." The letter also stated:

> "Inductee is fearful that his submission to induction in the United States armed services may be construed as having joined a pre-existing conspiracy by a war crime tribunal, with the result that he will become criminally liable for the acts done in furtherance of the conspiracy prior to his induction. He is further fearful that his acts in obedience to orders once he is a member of the armed services will be construed by a war crime tribunal as acts in furtherance of the continuing conspiracy and that he will be held criminally liable therefor.

> "Accordingly, inductee seeks by means of this document to insulate himself, so far as possible, from the imposition of criminal liability as a consequence of having joined the armed services of the United States and of having obeyed orders once a member thereof."

Captain Ohlson refused to read or sign this letter then, and defendant seemingly testified that was why he refused induction despite his claimed willingness to accept it.

The district court would not permit defendant to testify that he returned to the induction center on October 28 and 29, 1970, and expressed his wish to be inducted. An offer of proof was made to this effect and was refused. At his sentencing hearing, defendant refused to answer the court's question whether he would then accept induction, because "I don't think that I should be required to incriminate myself."

■ Defendant first argues that reversal is required because his Local Board failed to send him an SSS Form 150 for conscientious objectors, to reopen his classification, and to specify reasons for its denial of his claim. The Government responded that this argument was raised the first time on appeal, so that defendant is precluded from advancing it. However, a study of the transcript discloses certain peripheral attempts of defense counsel to touch upon this matter. Even though defense counsel's closing argument did not urge that defendant should be given a 1–O classification, one ground of the motion for judgment of acquittal at the close of the Government's case was that his 1–A classification was unjustified. In denying the motion, the trial court stated: "Well, I'm holding, in effect, by overruling your motion, that he was properly classified * * *." Therefore, the point was adequately reserved for appeal.

■ Defendant now asserts that the quotation from his letter of January 16, 1969, *supra*, constituted a claim for conscientious objector status. Even giving that paragraph a liberal construction, we cannot agree. Instead, defendant was particularly discussing the viewpoint taken in the book *In The Name of America*. The anti-war sentiment of that book was to be reinforced by additional materials critical of the Viet Nam war which were attached to the letter and intended as incorporations therein. Defendant was particularly concerned that the Board had apparently not read documents he had sent it, and he re-

minded the Board of its duty, as he conceived it, to read "whatever a registrant sends you with regard to his classification." Apparently defendant sought to "educate" the Local Board in the philosophy exemplified by these writings and espoused by him. This would serve as some kind of foundation for understanding defendant's desire to elicit from the Board its assurance that he would not be required to commit war crimes when inducted into military service, a subject that occupied the bulk of the letter. Far from requesting a conscientious objector status, the letter contemplated defendant's induction, as disclosed in the following excerpt:

"While I will feel better about military service after I receive the necessary assurance concerning my not being required to commit war crimes, I still may be exposed to the suspicion, at some later date that in fact I did enter into a conspiracy with our civilian officials from the President down (and not excluding yourselves) and with the military gentlemen, from the Chief of Staff down. But as citizens of the United States, we are all subject to that suspicion and I would not expect more from the government in that regard than anyone else, civilian or military, could expect. I feel also that I can get additional protection while in the military service by urging my fellows there, to avoid the commission of war crimes and to avoid being placed in a position so that they might be given orders to commit war crimes. I am sure that by establishing a reputation in the service as one who resisted, and helped his fellows in the military service to resist, the doing of any act that could be construed as a war crime or aiding and abetting a war crime, such matters will be considered favorably by those in charge of the prosecutions that are bound to occur as a result of our conduct of the war in Viet Nam." [3]

We are confirmed in our interpretation of this letter, which we think is the only reasonable one, by defendant's own testimony, for he stated that he never asked for any classification other than 1–A [4] and that he did not appeal the 1–A classification. As a draft counselor for two years from December 1968,[5] defendant surely knew how to file a claim for conscientious objector treatment. Indeed, he specifically testified he knew what to do if he thought he was entitled to a classification other than 1–A. His asserted request to be inducted on October 27, 1970, is also somewhat inconsist-

---

3. Even considered alone and out of context, the mere assertion that defendant agreed with the position of many people who object on moral, ethical, and religious grounds to engaging in military service and that as a matter of conscience he felt the waging of war was always evil is hardly the expression of a claim for conscientious objector status. Assuredly many men who have actually served their country in the military service believed that warfare between nations was morally wrong and entertained conscientious scruples against participating in its conduct. Yet, for one reason or another, perhaps sometimes because of their sense of duty to their country which has granted conscientious objector exemptions from service to those who chose to claim them, they have elected not to be totally guided by them in their actions. Thus the fact that a registrant has simply voiced and put on the record his philosophical objections to the waging of war and participation therein is not tantamount to claiming exempt status.

4. Question (by prosecutor): "Did you ever ask them for some classification other than 1–A—*and I am not referring to just a general letter about how you feel about things*, I am asking you if you ever asked them for something other than a 1–A?" Answer (by defendant): "No, sir." (Italics supplied.)

5. Defendant testified that he had started serving as a draft counselor in December 1968 and served in that capacity for two years. The testimony of Mrs. Theoline Dixon, Secretary to the Selective Service Operations Officer for Chicago and Cook County, Illinois, was that defendant was a draft counselor from February 1968 through October 1970, according to his Selective Service file.

ent with any claim to 1–O status. In his testimony, he never claimed to be a conscientious objector. Consequently, it would be thoroughly unreasonable to interpret defendant's letter as imposing on the Board any of the duties defendant claims to have been breached by the Board's inaction. See United States v. Hasmuk, 419 F.2d 929, 930–931 (7th Cir. 1970); United States v. McKinley, 447 F.2d 962, 963 (9th Cir. 1971); United States v. Stoppelman, 406 F.2d 127, 130–131 (1st Cir.), certiorari denied, 395 U.S. 981, 89 S.Ct. 2141, 33 L. Ed.2d 769 (1969). Cf. United States v. Rabe, 466 F.2d 783, 784–785 (7th Cir., decided August 11, 1972).

■■ Defendant next complains that the trial judge improperly admitted into evidence his entire Selective Service file. In United States v. Rogers, 454 F.2d 601, 605 (7th Cir. 1971), a decision subsequent to the trial in this case, we applied the usual relevancy rules to Selective Service files and stated that when appropriate objections to relevancy are lodged, it would be error to permit the whole Selective Service file to go to the jury. The transcript shows that defense counsel did object to material in the file relating to defendant's earlier refusal to be inducted on January 20, 1969, for which the Selective Service System recommended his indictment.[6] The basis of the objection was that this material was prejudicial. No other objection to material in the file was made and, accordingly, will not be considered. Rule 51 of the Federal Rules of Criminal Procedure. Here defendant was indicted for "willfully and knowingly" refusing to submit to induction in violation of 50 U.S.C. App. § 462, and the statute itself requires that the refusal be "knowingly done." The principal defense was that the defendant did not "willfully and knowingly" refuse induction. The defense theory was that Captain Ohlson misconceived defendant's conduct on October 27, 1970; rather than willfully re-

fusing induction, the defense sought to show that defendant was resigned to and prepared for induction. Defendant testified to his willingness to submit to induction regardless of whether the Captain in charge signed Borkenhagen's tendered document. The defense argued that by proffering it, the defendant merely hoped to have his anti-war sentiments noted for the record. Defendant affirmed his telling Captain Ohlson that he wanted to go into the army. With an undercurrent that the Captain's intransigence caused the problem, the defense argued the whole thing was "a big misunderstanding."

The issue of criminal intent was thus sharpened, and it was forcefully disputed. Of course, the Government bore the burden of proof in establishing its existence. Since the earlier refusal to submit to induction was similar in nature to the crime charged and was also of recent vintage, evidence of it was relevant to the issue of criminal intent. We cannot say its possible prejudicial effect clearly outweighed its legitimate probative value. Consequently, it was permissible for the district court to receive into evidence the scanty material concerning defendant's January 20, 1969, refusal to submit to induction. United States v. Jones, 438 F.2d 461, 465–466 (7th Cir. 1971); United States v. Smith, 432 F.2d 1109, 1111–1112 (7th Cir. 1970); United States v. Marine, 413 F.2d 214, 216–217 (7th Cir. 1969); see also Rule 404(b) of the Proposed Rules of Evidence for the United States Courts and Magistrates, 51 F.R.D. 315, 346, 348 (Revised Draft, March 1971). The 1969 delinquency was not brought to the jury's attention through witnesses or arguments of the Assistant United States Attorney. No request for a limiting instruction was made. (See Rule 30 of the Federal Rules of Criminal Procedure.) Since the jury's deliberations were not extended, it is dubious that any attention was paid to the few

---

6. Defendant's brief states that the prosecution was dropped because of Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532.

documents relating to this infraction in defendant's voluminous Selective Service file. Furthermore, the jury could hardly return any verdict but guilty in the face of defendant's admitted refusal to take the step forward required for induction without the tender of any really convincing defense at trial.

■ Defendant asserts that he was denied a fair trial because the Government's cross-examination of defendant and its closing argument suggested that he had violated other Selective Service regulations. The prosecutor solicited information that defendant had taken vacations in Germany and Australia without obtaining his Local Board's permission to leave the country. Defendant was also queried about not having reported to the Board certain changes of address and the fact that he had left college. However, with a minor exception, defense counsel never objected to the prosecutor's questions or the defendant's answers with reference to these matters.[7] Consequently, these alleged errors will not be considered on appeal. Rule 51 of the Federal Rules of Criminal Procedure. We reject defendant's contention that plain error warranting appellate cognizance has occurred. Similarly, no instructions were offered about these matters, nor did defense counsel object to comments on them during closing argument. Finally, on redirect, defendant offered a plausible explanation with respect to these subjects, apparently the strategy preferred by defense counsel. As Judge Evans, speaking for this Circuit, succinctly put it:

"While counsel should refrain from embarrassing the court or possibly prejudicing the jury, opposing counsel also has a duty. If he believes that a prejudice exists, due to an improper question or remark which will prevent a fair trial, the party who is prejudiced should ask for a new trial then and there. It is neither fair nor just that he first take a chance on a favorable verdict and, if disappointed, then complain." Morrow v. United States, 101 F.2d 654, 658 (7th Cir. 1939), certiorari denied, 307 U.S. 628, 59 S.Ct. 836, 83 L.Ed. 1511.

■ The next error urged is the giving of an instruction quoting from the statute under which the defendant was charged. While he concedes that the instruction "may be a correct statement of the law generally," defendant's counsel objects to the inclusion of the italicized matter in the following portion of the charge:

"Any person who evades or refuses service in the Armed Forces or any of the requirements of this Title (said Section) or *who in any manner shall knowingly fail or neglect or refuse to perform any duty required of him or in execution of this title,* or rules or regulations or directions made pursuant to this title, shall, upon conviction in any District Court of the United States or competent jurisdiction, be punished as the law provides." (Italics supplied.)

Defendant claims that because of the inclusion of the italicized phrase, he may have been convicted for offenses other than his refusal to submit to induction on October 27, 1970. However, the indictment itself is based on the italicized portion of the statute, so that it was, of course, appropriate for the trial judge to quote the statutory language to the jury. In view of the other instructions given to the jurors, they could not have possibly been misled into convicting defendant of some other crime by virtue of this particular charge. For example, the court advised the jury that the de-

---

7. Defense counsel did object to the question, "Now, you knew that you had to make a request to leave the country [for Australia] because you did it back in '64 when you wanted to go to Germany, is that correct?" However, defendant never answered that question and there was no ob-jection to the two related supervening questions by the court and by the prosecutor. We do not condone certain of the prosecutor's comments in closing argument about the defendant's travels abroad, but do not consider the matter sufficiently serious to constitute reversible error.

fendant was on trial only for the crime of refusing to submit to induction as charged in the indictment. That instruction read:

"The indictment charges the defendant with the crime of refusing to submit to induction as ordered, which has been defined, or which will be defined, in these instructions. The defendant is on trial only for the crime charged in the indictment and you must decide whether the evidence has proved that he is guilty beyond a reasonable doubt of that crime alone."

The judge thereafter specifically defined the four elements of the alleged crime with sole reference to the alleged refusal to be inducted. Considering such instructions, there was no possibility that the defendant was convicted for other misconduct.

■ Defendant also urges that he should have been permitted to prove that he returned to the induction center on the two days following the alleged offense in an effort to submit to induction. But the Ninth Circuit recently held in United States v. Greene, 456 F. 2d 256, 257 (1972; per curiam):

"His crime, however, was complete on May 27, 1970, the day that he failed to report. Any subsequent action or condition was irrelevant to this present conviction."

We think that the trial judge could properly consider whatever occurred after October 27, 1970, the day set for induction, as irrelevant. Under the circumstances here, there was no abuse of discretion. Cf. United States v. Ming, 466 F.2d 1000, 1005–1006 (7th Cir., decided May 26, 1972); United States v. Weissman, 434 F.2d 175, 179 (8th Cir.

1970), certiorari denied, 401 U.S. 982, 91 S.Ct. 1190, 28 L.Ed.2d 334.

■ Finally, defendant contends that the trial court should have given a proffered theory of defense instruction contending that he was willing to be inducted into the armed services, and that if the jurors had a reasonable doubt about his willingness at the time of the induction, they should resolve that doubt in favor of the defendant and find him not guilty.[8] However, as in United States v. Hessler, 469 F.2d 1294, 1296, 1297 (7th Cir., decided July 26, 1972), the content of this tendered instruction was covered by other instructions so that it would have been supererogatory to give it. The district judge told the jury that the defendant was presumed to be innocent and that he was on trial only for the crime of refusing to submit to induction as ordered. The court instructed the jury that the Government must prove beyond a reasonable doubt that the defendant refused to submit to induction and that the refusal was willful. The jurors were told that the Government must prove "that the defendant had the specific and certain intention to refuse to submit to induction." They were also told that "knowingly" as used in the statute and indictment meant "that the omission was done voluntarily and purposely and not because of mistake or accident." The term "willfully" as used in the indictment was carefully defined as requiring voluntariness on the part of the defendant, with knowledge that the omission "was prohibited by law and with the purpose of violating the law and not by mistake, accident or in good faith." It should be noted too that as in United States v. Hamilton, 420 F.2d 1096, 1099 (7the Cir. 1970), the theory

---

8. Defendant's requested instruction read:
"The defendant denies that he refused to submit to induction, as charged, and contends that at all times he was willing to be inducted into the armed services. The indictment charges that the defendant's failure or refusal to submit to induction was wilful, that is, with the intention of violating the law. If you have a reasonable doubt as to whether or not the defendant was willing, at the time of induction to be inducted into the armed service, you must resolve that doubt in favor of the defendant and find him not guilty."

of defense was vigorously argued in summation. Considering the completeness of the instructions given, it was unnecessary to give the willingness instruction tendered by defendant.

Affirmed.