**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Harold SILVERN, Defendant-Appellant.**

**No. 72–1133.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 27, 1972.

Decided Feb. 27, 1973.

James P. Chapman, Thomas P. Sullivan, Peter A. Flynn, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., William T. Huyck, Arnold Kanter, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before DUFFY, Senior Circuit Judge, STEVENS, Circuit Judge and ESCHBACH *, District Judge.

DUFFY, Senior Circuit Judge.

Defendant Silvern, a Chicago attorney, was charged herein with eleven counts of mail fraud, a violation under 18 U.S.C. § 1341 and one count of conspiracy to commit the substantive offense under 18 U.S.C. § 371. Also named with defendant Silvern in the indictment were Fred Jenkins, a Chicago police officer, and Dr. William Becker, a Chicago area physician. Jenkins was named as a codefendant with Silvern. Becker, who had previously been convicted of similar charges, was named as an unindicted accomplice in the mail fraud scheme.

Each of the mail fraud counts of the indictment alleged that the trio engaged in a scheme to defraud various insurance companies and clients of Silvern. Each of the substantive counts pertained to a separate personal injury case in which Silvern acted as counsel for the injured party and a specific mailing was alleged in each count with respect to that particular case.

The fraudulent scheme utilized their respective professions to the detriment of Silvern's clients and the defrauded insurance companies. It was alleged in the indictment that Silvern contacted Jenkins and engaged him to refer automobile accident victims to Silvern's office either by word of mouth, or by supplying the victim with Silvern's business card. After so doing, Jenkins would receive $50 to $500 in payment for each referral depending on Silvern's ultimate recovery. The victim then would contact Silvern or on occasion Silvern would personally contact the injured party which resulted in Silvern legally representing that person in a claim resulting from the accident. It was further alleged that Silvern then sent the clients so procured to Dr. Becker, who first examined them and then recommended treatment ranging from staying home from work to hospitalization.

It was further charged that Dr. Becker furnished defendant with exaggerated medical bills and reports which were false and fraudulent and that such bills were rendered in amounts far in excess of the amounts due and owing and reflected non-existing injuries and damages. Further, it was alleged that Silvern and Jenkins sent to the defrauded insurance companies accident reports prepared by Jenkins and the medical reports and bills prepared or caused to be prepared by Becker knowing them to contain false and fraudulent pretenses and representations.

The indictment claimed that Silvern collected the settlements from the insurance companies and paid his clients after deducting the full amount of Becker's bills and his purported legal fees. Silvern then divided the inflated medical recovery between himself and Dr. Becker. In every case but one charged in the indictment, the accident victim received less than fifty per cent of the settlement check from the insurance company.

The conspiracy count in effect reasserted the various elements of the substantive offense and charged that Silvern, Jenkins and Becker conspired to

---

* Honorable Jesse E. Eschbach, District Judge for the Northern District of Indiana, Fort Wayne Division, is sitting by designation.

commit offenses against the United States by mailing certain letters in order to perpetrate a scheme to defraud beginning in May 1966. The overt acts charged were the mailings alleged in the substantive counts as well as the conversations of either Jenkins or Silvern with the accident victims.

Count II of the indictment was dismissed on the day of trial pursuant to the government's motion and the case went to trial on the ten remaining substantive counts and the conspiracy count.

At trial the government produced an employee of the insurance company alleged to be defrauded in each count, as well as the respective clients of Silvern. Extensive testimony was adduced from each regarding the transaction of settlement. The insurance employee in every case testified with respect to the mailings alleged in the count, the contents of the company's file, the amount the case was settled for and the influence the statement of special damages had on the final settlement. The clients testified with respect to their injuries and the discrepancies with respect thereto as reflected on the bills and reports prepared by Dr. Becker and submitted by Silvern to the insurance companies. They also described their initial contact with Silvern, the subsequent referral to Dr. Becker and the ultimate settlement of their claims by Silvern.

Jenkins, who was severed from the trial on the government's motion, testified for the government. Dr. Becker also appeared as a government witness.

After a ten day jury trial, defendant Silvern was convicted on two counts of mail fraud in violation of 18 U.S.C. § 1341 and for conspiracy in violation of 18 U.S.C. § 371. A subsequent post-trial motion was denied by the court and Silvern was sentenced to concurrent eighteen month terms on each of the three

counts, subject to the parole provisions of 18 U.S.C. § 4208(a).

Defendant Silvern appeals his conviction raising the following grounds for reversal: (1) a supplemental Allen-type or "dynamite" charge given to the jury after deliberations had begun; (2) the failure of the trial court to strike testimony of Jenkins relating to the conspiracy to defraud; (3) the failure of the prosecution to prove mailings, an element of the offenses; (4) various evidentiary rulings; (5) the jury instructions.

## I.

■ Defendant Silvern's principle claim of error on appeal concerns the wording of a supplemental charge delivered to the jury during their deliberations which defendant argues was not in conformity with the mandate of United States v. Brown, 411 F.2d 930 (7 Cir., 1969), cert. den. 396 U.S. 1017, 90 S.Ct. 578, 24 L.Ed.2d 508 (1970), recommending the use of the standardized American Bar Association instructions in our Circuit.[1] Defendant also criticizes the circumstances under which the charge was given.

In the case before us, the jury commenced its deliberations at 11:10 a. m. on Tuesday, November 16, 1971. The deliberations continued for fourteen hours until noon the following day when the trial judge contacted defense counsel and in the absence of the jury advised him to the effect, "As of this moment, gentlemen, there has been no verdict returned. I propose to give a modified charge, modified from the Allen charge, . . . .".[2] The jury was convened and the following charge was read to them by the trial judge after he had ascertained that a verdict had not been reached.

"I have one further instruction for you ladies and gentlemen that I wish

---

1. American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury § 5.4, 146–56 (Approved Draft, 1968).

2. The charge emanating from the Supreme Court decision of Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

you would listen to very carefully, and it is as follows:

In a large portion of cases, absolute certainty cannot be expected. The verdict must be the verdict of each individual juror and not a mere acquiescence in the conclusions of others.

You should examine the questions submitted with proper regard and deference for the opinions of each other. You should consult with one another and deliberate with a view to reaching an agreement if it can be done without violence to individual judgment.

It is your duty to decide the case if you can conscientiously do so.

In the course of deliberations a juror should not hesitate to re-examine his own views and change his opinion, if convinced that it is erroneous, but no juror should surrender his honest conviction as to the weight or the effect of the evidence solely because of the opinion of his fellow jurors or for the mere purpose of returning a verdict.

If a much larger number of jurors favor conviction, the smaller number of jurors should consider the reasonableness of their doubt when it makes no impression upon the minds of other jurors who are equally intelligent and impartial and who have heard the same evidence.

If on the other hand, a much larger number of jurors favors acquittal, the smaller number of jurors should ask themselves whether they might not reasonably doubt the correctness of their judgment.

Likewise, the jurors in a majority favoring a finding for either party should ask themselves whether they might not reasonably doubt the correctness of their judgment, when it makes no impression upon the minds of the minority jurors equally intelligent and impartial as they are and who have heard the same evidence.

If you should fail to agree on a verdict, the case is left open and undecided. Like all cases, it must be disposed of some time. Any future jury must be selected in the same manner and from the same source as you have been chosen, and there is no reason to believe that the case would ever be submitted to twelve men and women more competent to decide it, or that the case could be tried any better or more exhaustively than it has been here, or that more or clearer evidence could be produced on behalf of either side.

You may now retire and reconsider the evidence in light of the court's instruction."

The jury returned to their deliberations and returned a verdict some six hours later.

In United States v. Brown, *supra,* the defendant argued on appeal that a Seventh Circuit derivation of the Allen charge was coercive *per se,* an unconstitutional deprivation of due process and a denial of his Sixth Amendment right to trial by an impartial jury. Our Court failed to find deprivations of a constitutional import, but instructed District Courts in our Circuit "when faced with deadlocked juries [to] comply with the standards suggested by the American Bar Association's Trial by Jury publication." (411 F.2d at 933).[3]

Our problem with the decision in *Brown, supra,* which was adhered to in Brandom v. United States, 431 F.2d 1391, 1399 (7 Cir., 1970) without elaboration, is the fact that while purporting to establish a new Circuit rule pursuant to appellate supervisory power, no comment was directed to whether additional content may be added to a charge by a trial judge to supplement or clarify the ABA guidelines.

In the case at bar, as in a recent decision by our Court, United States v. DeStefano and Speice, 476 F.2d 324 (7

3. See also United States v. Thomas, 146 U.S. App.D.C. 101, 449 F.2d 1177 (D.C.Cir., 1971); United States v. Fioravanti, 412 F. 2d 407 (3 Cir., 1969), cert. den., 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1970).

Cir., 1973), the judge included the ABA instructions in his charge in their entirety, but elected to add additional instructions, resulting in the controversy herein. As our Court reasoned in *DeStefano, supra,* our duty is to ". . . consider what aspects of the *Allen* charge the *Brown* decision most likely found objectionable, whether the addition of the ABA instructions would correct any coercive impact of the elements of the *Allen* charge that were used in the supplemental charge delivered in the instant case, and whether the supplemental instruction, as a whole, was within the spirit of the *Brown* decision." We now turn to the objections raised on appeal by the defendant with respect to the charge given by the trial court herein.

First, the defendant criticizes the portion of the charge which instructs the minority to re-examine their position. It should be noted that the charge herein contained the "balancing elements" suggested in *DeStefano, supra,* which ameliorate the potential coercion inherent in an admonition directed solely to the minority. The majority was likewise admonished to weigh their views and the jurors as a whole were instructed to not "surrender their conviction" merely for the purpose of reaching a verdict.[4]

Second, the defendant argues that the portion of the charge stating that "absolute certainty cannot be expected" weakens the quantum of proof required by the government in that the "beyond a reasonable doubt" standard is thereby denigrated. In the body of the instruction, the jurors were instructed in three different places to consider the reasonableness of their doubts. Furthermore, the trial court added that an opinion of an individual juror should not change his opinion unless he was convinced it was erroneous. Therefore, we are of the opinion that the instruction did not present a lesser standard than "beyond a reasonable doubt" for the juror's consideration.

Third, the defendant asserts he was prejudiced by the instruction paragraph which informs the jurors, "If you should fail to agree on a verdict, the case is left open and undecided. . . . it must be disposed of some time." It is argued that such a statement infers that the court feels it incumbent that a verdict be reached. Yet, we note that the coercive instruction that "the case must at some time be decided", from Commonwealth v. Tuey, 8 Cush. (62 Mass.) 1 which has been criticized in *Brown, supra,* and by numerous other courts and commentators has been omitted. While we do not encourage further use of this part of the instruction, we do not feel this statement results in the coercion found in an absolute admonition that the case must be retried, as condemned in *Brown, supra* and United States v. Flannery, *supra.*

We are of the opinion that these objections to the wording of the supplemental charge raised by the defendant and other minor points with respect thereto, highlighted on appeal, were not so inconsistent with the mandate of *Brown, supra,* to require reversal of the conviction pursuant to our supervisory powers.

Furthermore, we find no inherent prejudice in the timing of the charge or the circumstances under which the charge was given. The jury had deliberated for fourteen hours and had informed the judge that they were in fact deadlocked, Cf. United States v. Contreras, 463 F.2d 773 (9 Cir., 1972). Additionally, the jury continued to deliberate for six hours after the rendition of the supplemental charge which indicates that no coercion was present and the "effect of the majority running roughshod over the minority", *DeStefano, supra,* was not realized.[5]

We find under the facts of this case that neither the wording of the supplemental charge containing the ABA recommendations nor the timing and circumstances surrounding the charge vio-

---

4. United States v. Flannery, 451 F.2d 880, 883 (1 Cir., 1971).

5. United States v. Bambulas, 471 F.2d 501 (7 Cir., 1972).

lated defendant's constitutional rights. Also, we feel no undue prejudice occurred from the supplemental charge.

## II.

Defendant Silvern argues the trial court erred in admitting the testimony of Fred Jenkins although he was a codefendant and alleged coconspirator in the scheme to defraud. Defendant contends Jenkins was not fully apprised of the entire scheme, nor was he acquainted with Dr. Becker, which thereby renders his testimony concerning his part in the operation irrelevant and immaterial.

■■ We opine that the testimony of Jenkins was properly admitted not only to attest to the acts and declarations of defendant Silvern during the execution of the conspiracy to which he was a privy, United States v. Peoni, 100 F.2d 401 (2 Cir., 1938), but also to prove motive and design and to establish a common scheme relating to the matter on trial, United States v. Lambert, 463 F.2d 552 (7 Cir., 1972); United States v. Ming, 466 F.2d 1000 (7 Cir. 1972); United States v. Borkenhagen, 468 F.2d 43 (7 Cir., 1972). In addition, the government contends on appeal that the testimony of Jenkins was adduced for the purpose of depicting the scheme and intent to defraud utilized by and underlying Silvern's actions prior to and during the alleged illegal conduct. It is settled law that evidence of consistent prior conduct and related illegal acts are admissible in proving knowledge and intent when a defense is presented to the contrary. United States v. Hampton, 457 F.2d 299 (7 Cir., 1972); United States v. Marine, 413 F.2d 214 (7 Cir., 1969), cert. den. 396 U.S. 1001, 90 S.Ct. 550, 24 L.Ed.2d 493. Further we note the trial court properly limited the evidence adduced from Jenkins' testimony to that which would rebut the exculpatory theories offered by the defense. United States v. Birrell, 447 F.2d 1168 (2 Cir., 1971), cert. den. 404 U.S. 1025, 92 S.Ct. 675, 30 L.Ed.2d 675 (1972).

For these reasons, we are of the opinion that the testimony of Jenkins was properly admitted by the trial court.

## III.

■ Defendant challenges the sufficiency of the evidence presented by the government with respect to the illegal mailings. Silvern argues the government did not prove beyond a reasonable doubt that the mails had been used for any of the alleged offenses. Thus, the conviction must fall, he argues, relying upon Mackett v. United States, 90 F.2d 462 (7 Cir., 1937).

For each substantive count that the jury found defendant guilty (Counts IX and XI) the government produced an employee of the defrauded insurance company who testified about the custom and practice of their respective offices in receiving mail and filing procedures. Certain letters relating to the offenses mailed by Silvern to the companies, and from the companies to Silvern were identified by the insurance employees who also explained time stamps and other markings on the envelopes, as well as their personal knowledge of the correspondence.

We are of the opinion that the office custom and practice with respect to mailing attested to by Mr. Cuchra regarding Count IX and by Mr. Alden regarding Count XI was ample when coupled with the exhibits offered by the government and identified by the respective employees of the insurance companies to submit the question of mailing to the jury. United States v. Fassoulis, 445 F.2d 13 (2 Cir., 1971), cert. den., 404 U.S. 858, 92 S.Ct. 110, 30 L.Ed.2d 100; Stevens v. United States, 306 F.2d 834 (5 Cir., 1962). The arguments advanced by the defendant to discredit the government's proof on this issue are spurious at best.

## IV.

Defendant Silvern objected on appeal to various evidentiary rulings by the

trial court, and also to its failure to tender requested defense instructions. Neither of these grounds merits reversal of his conviction.

For the reasons hereinbefore discussed, the conviction of defendant Silvern is

Affirmed.